UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
STAR MARK MANAGEMENT, INC.,                    MEMORANDUM & ORDER
GREAT MARK CORPORATION,                        07-CV-3208 (KAM)(SMG)
JIMMY ZHAN a/k/a YI Q. ZHAN,

                    Plaintiffs,

          -against-

KOON CHUN HING KEE SOY & SAUCE
FACTORY, LTD.

                    Defendant.
----------------------------------X
**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

          Plaintiffs Star Mark Management, Inc., Great Mark

Corporation, Jimmy Zhan a/k/a Yi Q. Zhan (collectively,

"plaintiffs" or "Star Mark") filed the instant action against

defendant Koon Chun Hing Kee Soy & Sauce Factory, Ltd.

("defendant" or "Koon Chun") under the Trademark Act of 1946

(the "Lanham Act"), 15 U.S.C. §§ 1051 *et seq.* Plaintiffs seek a

declaratory judgment, cancellation of a trademark held by

defendant, and additional relief. At this time, there are two

motions before the court: (i) Koon Chun's motion to dismiss,

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure

("Rule 12(c)"), and for sanctions, pursuant to 28 U.S.C. § 1927

(*see* Defendant's Motion to Dismiss ("Def. Mot. to Dism."), Doc.

Entry No. 21), and (ii) Koon Chun's motion for sanctions,

pursuant to Rule 11 of the Federal Rules of Civil Procedure

1

("Rule 11") (*see* Defendant's Motion for Sanctions ("Def. Mot. for Sanc."), Doc. Entry No. 10).  Plaintiffs consolidated their opposition to both motions into one memorandum. (*See* Plaintiffs' Opposition to Dismissal and Sanctions ("Pl. Opp."), Doc. Entry No. 27.)  For reasons set forth below, both of defendant's motions are granted.  The complaint is dismissed in its entirety and plaintiffs are sanctioned in the form of costs and reasonable attorneys' fees.

## BACKGROUND

Star Mark is a New York-based food products distributor with a distribution center located in Brooklyn, New York.  (Complaint, Doc. Entry No. 1 ¶¶ 5-6.)  Koon Chun is a Hong Kong-based food products manufacturer.  (*Id.* ¶¶ 9-10.) Koon Chun manufactures a variety of sauces and seasonings used in Asian cooking, including hoisin sauce.  (*Id.* ¶ 10.)  Hoisin sauce is a sweet and spicy sauce used both in cooking and as a condiment for Chinese foods.  (*Id.* ¶¶ 12, 24.)  Koon Chun uses the mark "Koon Chun Sauce Factory" on the labels on all of its products, and this mark is registered with the United States Patent and Trademark Office ("PTO"), Registration No. 1,410,790 (the "Koon Chun Mark").  (*Id.* ¶¶ 14-15.)

This action arises out of a prior litigation between the parties, in which Koon Chun sued Star Mark for trademark infringement based on Star Mark's sales of counterfeit versions of Koon Chun's hoisin sauce. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgt., Inc., Great Mark Corp., & Yi Q. Zhan*, 04-CV-2293 (JFB)(SMG) (the "First Action"). In the First Action, discovery concluded and motion practice ensued: Koon Chun moved for summary judgment on the issue of liability, Star Mark sought partial summary judgment, seeking to preclude Koon Chun from recovering lost profits, and Koon Chun sought sanctions against Star Mark for filing its preclusion motion in the First Action.

In a Memorandum and Order dated January 8, 2007, District Judge Joseph F. Bianco consolidated and addressed the motions in the First Action. *See Koon Chun Hing Kee Soy & Sauce Factory Ltd. v. Star Mark Mgt., Inc.*, 04-CV-2293 (JFB (SMG), 2007 WL 74304 (E.D.N.Y. Jan. 8, 2007). Judge Bianco granted partial summary judgment in Koon Chun's favor, finding Star Mark liable for trademark and trade dress infringement (15 U.S.C. §§ 1114(1), 1125(a)) and unfair competition (15 U.S.C. § 1125(a)). *See id*. at *8-11. He denied Koon Chun's motion to the extent that Koon Chun sought judgment on whether Star Mark's violation of the Lanham Act was willful. *See id*. at *11-13. He denied Star Mark's motion, holding that Koon Chun could seek recovery

of lost profits. *See id*. at *13-14. Although Koon Chun

prevailed on the preclusion motion, Judge Bianco declined to

grant Koon Chun's request for sanctions against Star Mark. *See*

*id*. at *14.

Nearly five months after Judge Bianco's decision on

the motions in the First Action, Star Mark sought leave to amend

its answer to add new defenses and counterclaims. (*See* May 31,

2007 Bing Li Letter, attached as Exhibit 3 to the Declaration of

Anthony A. Coppola in Support of Sanctions ("Coppola Sanc.

Decl."), Doc. Entry No. 12.) In its request for leave to amend

its answer, Star Mark asserted that the Koon Chun Mark, which

translates into "Koon Chun Factory Sauce," does not identify any

specific goods. In spite of Judge Bianco's decision, Star Mark

contended that the Koon Chun Mark did not protect any specific

Koon Chun products and was invalid under the Lanham Act. (*Id*.

at 1-2.) Additionally, Star Mark contended that use of the term

"hoisin" translates into the words "fish" or "sea food" and was

deceptive as Koon Chun's sauce contains no fish or sea food.

Star Mark further contended that the absence of fish or sea food

as an ingredient was a "surprise" both to Star Mark and

consumers of Koon Chun products. (*Id*. at 2-3.) Based on these

assertions, Star Mark sought leave to amend its answer to add

the affirmative defenses of (i) trademark misuse, (ii) unclean

hands (citing Section 1115 of the Lanham Act), and (iii) unfair

and deceptive business practices (citing New York General Business Law § 349). (*Id.* at 3-4.) Additionally, Star Mark sought leave to amend to add counterclaims seeking cancellation of registration of the Koon Chun Mark pursuant to 15 U.S.C. § 1064. (*Id.* at 4.)

Magistrate Judge Gold held a status conference to address Star Mark's request to amend its answer and to add counterclaims.[1] (*See* June 20, 2007 Transcript of Civil Cause for Telephone Conference ("Status Conf. Tr."), attached as Exhibit 10 to the Declaration of Anthony A. Coppola in Support of Dismissal ("Coppola Dism. Decl."), Doc. Entry No. 21.) After hearing Star Mark's justifications for making such a request, Judge Gold stated:

> [M]y feeling is that this motion is highly
> inappropriate at this juncture of the case.
> First of all, to suggest that a label is
> misleading because something is called
> seafood sauce and doesn't contain seafood
> when many sauces that we use don't -- aren't
> named by the dish -- based upon their
> ingredients but rather by the foods that
> they're used to accompany and where I am
> sure, even though nobody's mentioned it, the
> actual ingredients are listed somewhere on
> the label or it can't be marketed in the
> United States . . .

---

[1]     The parties consented to jurisdiction before Magistrate Judge Gold for resolution of the remaining issues in the First Action.

> . . . And where all of this was knowable,
> whether known or not, during the extensive
> and difficult[] and closely managed
> discovery process and where the plaintiff
> has moved for and obtained summary judgment,
> it's stunning to me that such a motion would
> be contemplated much less pursued. And I
> will not disturb the summary judgment
> finding and I will not disturb the schedule
> for trial and I will not consider delaying
> any aspect of this case based upon the
> motion.

(Status Conf. Tr. at 13-14.)

Although Judge Gold noted that he had no authority to prohibit Star Mark from filing its motion or any other motion and that Star Mark could file the motion at any time, he further warned that:

> [I]f it's made and I deem it appropriate, I
> will consider whether Section 1927 of Title
> 28 warrants some kind of a sanction because
> frankly, nothing you've said so far has
> explained to me what possible good faith
> basis there could be for it.
>
> . . . [T]he procedural posture of the case
> is such that it would be highly irregular
> for this kind of relief to be sought now,
> much less obtained and I hope you will bear
> that in mind when you decide how to proceed.

(*Id.* at 14.) The parties further discussed the contemplated motion, at which point Judge Gold reiterated:

> I do not see any bad faith in describing a
> sauce by food that it might accompany
> instead of by its ingredients.  Number two,
> the ingredients are on the label.  Number
> three, it could have been discovered before
> the summary judgment practice and there's no
> reason other than the fact that it didn't
> occur to anybody, that it wasn't, as is true
> of your remarks about the label.  So given
> all of those factors, I just can't imagine
> how the motion could be responsibly granted
> but if you think I am overlooking something
> and are pronouncing those factors, feel free
> to make your motion.  I certainly am not
> going to penalize you.  If I impose anything
> under [28 U.S.C. §] 1927, it would be the
> costs of opposing the motion, the costs and
> fees incurred in opposing the motion.

(*Id*. at 15-16.)  Again, Judge Gold warned:

> I make no final judgment about [28 U.S.C. §]
> 1927.  I just am alerting you that my
> preliminary reaction to this is so strong
> that I don't want you led into making this
> motion for some kind of tactical reason when
> it's hard for me to see any merit to it
> whatsoever from your letter.

(*Id*. at 17.)

Two days later, Star Mark filed a letter informing the court that it decided against filing the contemplated motion. (*See* Bing Li Letter, dated June 22, 2007, attached as Exhibit 11 to the Coppola Dism. Decl.)  Star Mark's counsel further noted that:

> Defendants will, instead, commence a
> separate action to challenge the
> registration and registrability of
> plaintiff's trademark.  The Court's
> pronouncement that it will consider section
> 1927 sanctions when deciding the proposed
> motion creates a real and substantial risk
> on the part of the defendants.

(*Id.*)

Approximately one month later, on August 3, 2007, Star Mark commenced the instant action.  (*See* Complaint, Doc. Entry No. 1.)  In this action, Star Mark seeks:  (i) a declaratory judgment that the Koon Chun Mark is not registrable, pursuant to 15 U.S.C. § 1051, (ii) a declaratory judgment that the Koon Chun Mark is not registrable, pursuant to 15 U.S.C. § 1052, (iii) cancellation of the Koon Chun Mark for abandonment, pursuant to 15 U.S.C. §§ 1064(3), 1127, (iv) cancellation of the Koon Chun Mark for fraudulent procurement, pursuant to 15 U.S.C. § 1064(3), and (v) any relief deemed appropriate for Koon Chun's deceptive acts and practices, in violation of New York General Obligation Law § 349.  (*See id.*)  Koon Chun answered, denying the allegations and raising numerous affirmative defenses.  (*See* Answer, Doc. Entry No. 8.)

As noted previously, Koon Chun filed two motions, which are now before the court.  First, Koon Chun moved for sanctions against Star Mark, pursuant to Rule 11.  (*See* Def.

Mot. for Sanc.)  Second, Koon Chun moved for dismissal and sanctions, pursuant to Rule 12(c) and 28 U.S.C. § 1927.  (*See* Def. Mot. to Dism.)  Plaintiffs consolidated their opposition to both motions into one memorandum.  (*See* Pl. Opp.)  The court held oral argument on both motions on April 9, 2009.

On May 21, 2009, Judge Gold issued a Memorandum and Order in the First Action, ruling on the bench trial that he held from November 27, 2007 to December 4, 2007 on the issues of willfulness, damages, and injunctive relief.  (*See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgt., Inc., et al.*, 04-CV-2293 (SMG) May 21, 2009 Memo. & Order, Doc. Entry No. 222 at 4-10, 12-20.)  Judge Gold held that Star Mark had willfully violated the Lanham Act and awarded Koon Chun $82,964.40 in damages.  He dismissed Koon Chun's state law and common law claims.  (*Id*. at 25.)  He directed the parties to meet and confer to agree on reasonable attorneys' fees and costs, and to delineate the terms of a permanent injunction. (*Id*. 25-26.)  Koon Chun has sought reconsideration of the denial of lost profits.  (*See* Koon Chun's Motion for Reconsideration, First Action, Doc. Entry No. 223.)  At the time of the issuance of this memorandum and order, the parties are litigating the issue of attorneys' fees in the First Action.

I.   **Motion to Dismiss**

     A.   **Motion to Dismiss Standard**

          Under Rule 8(a) of the Federal Rules of Civil
Procedure, a complaint must include a "short and plain statement
of the claim showing that the pleader is entitled to relief."
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quoting
Fed. R. Civ. P. 8(a)(2)).  "After the pleadings are closed --
but early enough not to delay trial -- a party may move for
judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Courts
resolve motions to dismiss filed pursuant to Rule 12(c) by
applying the same standards used to resolve motions to dismiss
filed under Rule 12(b)(6). *See Burnette v. Carothers*, 192 F.3d
52, 56 (2d Cir. 1999).

          Courts resolving motions to dismiss filed under Rule
12(b)(6) must "accept as true all factual statements alleged in
the complaint and draw all reasonable inferences in favor of the
non-moving party."  *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d
184, 191 (2d Cir. 2007) (internal citation omitted).  Courts are
not, however, required to accept "conclusions of law or
unwarranted deductions."  *First Nationwide Bank v. Gelt Funding
Corp*., 27 F.3d 763, 771 (2d Cir. 1994) (quoting 2A, James
William Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶

12.08, at 2266-69 (2d ed. 1984)). Conclusory allegations "will

not suffice to prevent a motion to dismiss." *Smith v. Local 819

I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (quoting

*Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y.

2000)).

In resolving such a motion, courts must determine

whether the "[f]actual allegations . . . raise a right to relief

above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in

fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)

(citation omitted). Thus, to survive dismissal, the allegations

in the complaint must meet the standard of "plausibility." *See

id.* at 563 n.8, 564. *Twombly* does not require that the

complaint provide "detailed factual allegations" (*id.* at 555);

however, it must "amplify a claim with some factual allegations

. . . to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d

143, 157-158 (2d Cir. 2007).

Ordinarily, courts are "required to look only to the

allegations on the face of the complaint"; however, courts may

consider "documents . . . that are attached to the complaint or

incorporated in it by reference . . . ." *Roth v. Jennings*, 489

F.3d 499, 509 (2d Cir. 2007). "[E]ven if not attached or

incorporated by reference, a document 'upon which [the

complaint] *solely* relies and which is *integral to the complaint'*
may be considered by the court in ruling on such a motion." *Id.*
(quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42,
47 (2d Cir. 1991)) (emphasis in original). "And whatever
documents may properly be considered in connection with the Rule
12(b)(6) motion, the bottom-line principle is that 'once a claim
has been stated adequately, it may be supported by showing any
set of facts consistent with the allegations in the [cross-
claim].'" *Id.* at 510 (quoting *Twombly*, 550 U.S. at 563).

## B. Application

### 1. Claim Preclusion

Under the doctrine of *res judicata* or claim
preclusion, "a final judgment on the merits of an action
precludes the parties or their privies from relitigating issues
that were or could have been raised in that action." *Monahan v.
New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir.
2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).
"Whether or not the first judgment will have preclusive effect
depends in part on whether the same transaction [or] series of
transactions is at issue, whether the same evidence is needed to
support both claims, and whether the facts essential to the
second were present in the first." *Monahan*, 214 F.3d at 285
(quoting *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1260

(2d Cir. 1983)).  To prove this affirmative defense, a party must establish that:  "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Monahan*, 214 F.3d at 285 (citing *Allen*, 449 U.S. at 94)).  As many courts have noted, *res judicata* reflects "the common law principles of judicial economy and comity."  *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008).

The first and second prongs of the *res judicata* defense are not in dispute.  As a matter of law, Judge Bianco's grant of summary judgment in Koon Chun's favor on the issue of Star Mark's liability constitutes an adjudication on the merits. *See Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) ("It is long settled . . . that a summary judgment dismissal is considered a decision on the merits for *res judicata* purposes.") (citing *Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 715 (2d Cir. 1977)). Further, both actions involve precisely the same parties.  The decisive issue, therefore, is whether Star Mark's claims could have been raised in the First Action.

It is well settled that "[a]n issue that was or could have been raised in a prior action is one that necessarily involves the same claim or nucleus of operative fact as the first suit." *Acosta-De La Cruz v. United States*, 07-CV-5386 (NGG), 2008 WL 2700293, at *3 (E.D.N.Y. Jul. 9, 2008) (quoting *Channer*, 527 F.3d at 280) (internal quotation marks omitted). "[T]he facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit"; rather, it is enough that "the facts *essential to the second* were [already] present in the first." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110-11 (2d Cir. 2000) (emphasis in original); *see also Mac Pherson v. State Street Bank & Trust Co.*, 452 F. Supp. 2d 133, 140 (E.D.N.Y. 2006) ("Whatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata.") (citing *Berlitz Sch. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980)). In this circuit, "[t]hree indicia determine whether the second suit involves the same claim or nucleus of operative fact as the first: (1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms

to the parties' expectations." *Channer*, 527 F.3d at 280
(internal quotation marks omitted).

The gravamen of Star Mark's complaint is that (i) the
Koon Chun Mark is not registrable, and therefore, not
protectable under the Lanham Act, and (ii) Koon Chun's use of
the term "hoisin" is deceptive in violation of the Lanham Act
and state law.

It bears noting that, in the First Action, Judge Gold
explained to Star Mark that it could have moved to amend its
answer to litigate these claims. Judge Gold expressed
disapproval for Star Mark's belated attempt to do so and
questioned the merits of the proposed newly asserted claims;
however, at no time did he prohibit Star Mark from litigating
these claims. Thus, contrary to Star Mark's assertions, Star
Mark faced no procedural bar to litigating its claims in the
First Action. The claims could have been raised in an answer,
an amended answer or a motion for leave to amend. Indeed, when
Star Mark first raised these claims (five months after Judge
Bianco granted summary judgment in Koon Chun's favor on the
issue of liability), Judge Gold specifically noted in his minute
entry of the June 21, 2007 pre-motion conference that Star Mark
"may move to amend their answer, if they choose to do so, at any
point they deem appropriate." (Minute Entry, Jun. 21, 2007,

attached at Exhibit 2 to Coppola Sanc. Decl.)  Thus, it is apparent that Star Mark's claims could have been litigated in the First Action based the record in the underlying case as reflected in the documents provided by the parties.  *See Waldman*, 207 F.3d at 112 n.4 (rejecting plaintiff's request for an exception to *res judicata* and noting that the plaintiff did not face any procedural bar from seeking relief in the underlying action).  Further, as set forth below, under the "transactional" analysis required in this circuit, it is clear that Star Mark's claims arise out of the same common nucleus of fact as the First Action.

> **a.    Claims Attacking the Koon Chun Mark Arise Out of the Same Common Nucleus of Fact**

In the Amended Complaint in the First Action, Koon Chun entitled a section "Plaintiff's Valuable Mark."  (Amended Complaint in First Action, Doc. Entry No. 22 ("Am. Compl. First Action") at 3.)  In that section Koon Chun alleged that:  (i) it owns the Koon Chun Mark (U.S. P.T.O. Reg. No. 1, 410,790) (*id*. ¶ 11), (ii) the Koon Chun Mark is located on the labels of all of its products (*id*. ¶¶ 14, 19), (iii) the labels on its products constitute a "trade dress" consisting of the Koon Chun Mark and the name of a Koon Chun product on the space in between two blue trapezoids (one of which contains the Koon Chun Mark) (*id*. ¶¶ 12-16), and (iv) Koon Chun's hoisin sauce is sold in cans

wrapped in labels bearing the Koon Chun Mark (*id*. ¶ 21). Additionally, Koon Chun attached a copy of its trademark registration to the Amended Complaint. (Am. Compl. First Action Ex. A.)

In the instant action, Star Mark's complaint asserts essentially identical facts to those portions of the Amended Complaint in the First Action excerpted above. In fact, Star Mark's complaint even quotes from portions of the Amended Complaint in the First Action. (*See* Compl. ¶ 18.) Notably, Star Mark alleges no facts that have developed since litigating the First Action that might provide an explanation for why these trademark-related claims could not have been asserted as counterclaims or defenses and litigated in that action. Thus, the facts relevant to Star Mark's claims in this action are related in time, space, origin, and motivation to the First Action. Both actions can be resolved upon consideration of nearly identical facts. As such, litigation of Star Mark's claims here could have been asserted in the First Action and would have formed a convenient trial unit and would have conformed to the parties' expectations. Contrary to Star Mark's contentions, litigation of their claims in this second action would contravene any opponent's reasonable expectations of a proper trial unit.

With respect to the claims attacking the Koon Chun Mark (*see* Compl. ¶¶ 26-42 (Star Mark's First through Fourth Claims)), it is clear that these claims could have been litigated in the First Action as they arise out of an identical factual predicate. *See Waldman*, 207 F.3d at 110-11 (barring a second action as "it is patent, despite [plaintiff's] contentions, that the overlapping facts were directly relevant to the earlier suit"); *Acosta-De La Cruz*, 2008 WL 2700293, at *3 (barring petitioner's second action as his "claims of willful blindness and harm to his elderly mother involve the same nucleus of operative fact as [the first action] and therefore should have been raised in that proceeding"); *Mac Pherson*, 452 F. Supp. 2d at 141 (barring plaintiff's second action asserting claims under 42 U.S.C. § 1983 as "[t]he factual predicate of Plaintiff's present complaint is precisely the factual predicate raised as violations of 'due process' before the state trial court"). Accordingly, the court dismisses Star Mark's First through Fourth claims.

### b. Deception-Related Claims Arise Out of the Same Common Nucleus of Fact

In the instant action, Star Mark now seeks to dispute Koon Chun's use of the term "hoisin" as the name for its sauce. Star Mark alleges that the term "hoisin" means "fish" or "seafood" and that the term "hoisin sauce" means "fish or

seafood sauce." Star Mark contends that Koon Chun deceived its customers as its "hoisin sauce" contains no fish or seafood. (Compl. ¶ 23.)

The facts essential to Star Mark's deception-related claims were presented in the First Action. In the Amended Complaint in the First Action, Koon Chun embedded an image of a can of its hoisin sauce. (Am. Compl. First Action ¶ 13.) Koon Chun described hoisin sauce as "a sweet and spicy soybean based sauce used in cooking and as a condiment for Chinese foods." (*Id*. ¶ 21.) As Judge Bianco noted, Star Mark did not dispute this description of Koon Chun's hoisin sauce in the First Action. *See Koon Chun*, 2007 WL 74304, at *4. In their complaint in this action, Star Mark conceded that the labels on Koon Chun products contain an ingredient list. (Compl. ¶ 21.)

Further, Star Mark's complaint in this action indicates that Star Mark "*learned in the course of the [First Action]* that Koon Chun's 'Hoisin Sauce' does not contain any fish or seafood ingredient." (Compl. ¶ 25.) (emphasis added). In their letter to Judge Gold in the First Action, Star Mark indicated that it learned of the absence of fish or seafood during a deposition taken during discovery in the First Action. (*See* Coppola Sanc. Decl. Ex. 3 at 3.) To excuse its belated request to litigate the deception-related claims in the First

Action, Star Mark noted that "[t]hroughout the course of the litigation, the semantics of the term 'Hoisin' had, unfortunately, escaped our attention." (*Id.*) In fact, Star Mark conceded in the First Action that Koon Chun imported hoisin sauce into the United States under a lower tariff, based on the absence of fish or seafood. (*Id.*) Star Mark then waited until May 31, 2007, long after the conclusion of discovery, and five months after Judge Bianco issued his Memorandum and Order granting summary judgment in Koon Chun's favor to raise this issue with the court purportedly because Star Mark thought that it was the only Koon Chun customers fooled by the name of the sauce and moved to litigate this issue as soon as it realized that Koon Chun had deceived all of its customers. (*Id.*)

The absence of fish or seafood from the ingredients of Koon Chun's hoisin sauce cannot constitute a newly discovered fact. Indeed, the hoisin sauce label, which was in the court record and available to the parties for inspection throughout the entire First Action, states that the sauce consists of: sugar, vinegar, soya bean, water, salt, wheat flour, garlic, sesame seed, chili, spices, and artificial color. (*See* Coppola Sanc. Decl. Ex. 8.) Whatever revelation Star Mark now claims to have uncovered could have been uncovered and litigated during the course of the First Action with minimal diligence. Moreover, it is questionable whether the general public was

unaware of the alleged ingredient deficiency. Hoisin sauce is generally understood to be:

> Made from soybeans, flour, sugar, water, spices, garlic, and chili, it is sweet and spicy. It is used in cooking shellfish and fatty meats such as pork and duck. As a condiment, hoisin sauce is eaten with shrimp, pork, and poultry and is invariably served with Peking duck.

The New Encyclopedia Britannica, Vol. 5, 976 (15th ed. 2005).

All of these facts were available during the first litigation and, consequently, Star Mark's recent discovery does not constitute a "new fact" under *res judicata* analysis. *See Waldman*, 207 F.3d at 112-14 (affirming dismissal of plaintiff's second complaint against the defendant and holding that evidence of a few new incidents of discrimination (including an admission from defendant) did not constitute new facts for purposes of *res judicata* as plaintiff could have litigated his new claims in the first action without the alleged new evidence); *Yeiser*, 535 F. Supp. 2d at 422 (dismissing the complaint "[b]ecause plaintiffs could have presented the same claims they now assert . . . as defenses or counterclaims in the [earlier] action"); *Mac Pherson*, 452 F. Supp. 2d at 141 (dismissing plaintiff's complaint as "there is nothing substantively different about [it] other than [the] reliance on a new legal theory").

With respect to the claims premised on the allegedly deceptive use of the term "hoisin" (Compl. ¶¶ 39-48), these claims, too, could have been litigated in the First Action as they arise out of the same common nucleus of fact and are not premised on any new evidence. Again, by nature of the nearly identical evidence that would be presented in both actions, litigation of Star Mark's claims in the First Action would have formed a convenient trial unit and would have conformed to the parties' expectations. Accordingly, the court dismisses Star Mark's Fourth and Fifth claims.

## 2. Issue Preclusion

"The 'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion, 'is that an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.'" *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (quoting *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 718-19 (2d Cir. 1993)). Collateral estoppel or issue preclusion applies when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the

issues previously litigated were necessary to support a valid and final judgment on the merits." *Ali*, 529 F.3d at 489 (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)) (internal quotation marks omitted).

One of the issues raised in both actions is whether the Koon Chun Mark is valid and protectable under trademark law. The parties briefed this issue in the First Action in their summary judgment submissions. (*See* Koon Chun's Motion for Partial Summary Judgment, First Action, Doc. Entry No. 91 at 3-5.) There was a full and fair opportunity for litigation of the issue of the validity of Koon Chun's Mark in the First Action as the parties engaged in extensive discovery and motion practice. The validity of the Koon Chun Mark was squarely before the court during the First Action as Judge Bianco expressly held that:

> [P]laintiff's certificate of registration with the PTO for the Koon Chun mark is prima facie evidence that the mark is registered and valid (*i.e.*, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce. **Here, it is undisputed that plaintiff's mark is valid and protected under the Lanham Act.**

*See Koon Chun*, 2007 WL 74304, at *9 (internal citations and quotation marks omitted) (emphasis added). Finally, Judge Bianco could not have granted summary judgment in Koon Chun's favor without making this finding. *See Koon Chun*, 2007 WL

74304, at *8 (noting that to determine whether a trademark was infringed, courts must first look "to see whether the plaintiff's mark merits protection under the [Lanham] Act") (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006)).

It is apparent that any litigation in this action as to the validity of the Koon Chun Mark would disturb Judge Bianco's ruling on this issue and as such, is barred under the doctrine of collateral estoppel. Accordingly, Star Mark's First through Fourth claims are barred by collateral estoppel.

### 3. Statute of Limitations

"The Lanham Act does not include a statute of limitations, so courts look to the most analogous state statute of limitations for the appropriate time period." *See Connecticut Comm. Bank v. Bank of Greenwich*, 578 F. Supp. 2d 405, 423 (D. Conn. 2008) (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996)). In the instant action, there are two analogous New York statutes of limitation. The first is New York's statute for actions "for which no limitation is specifically prescribed by law," which gives litigants six years from the time of accrual to file their complaints. *See* N.Y. C.P.L.R. § 213(1) (McKinney 2008). The second is New York's statute for actions based upon fraud. *See id*. § 213(8).

Under § 213(8), litigants have "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." *Id*.

In the instant action, it is clear that all of Star Mark's claims are time-barred.[2] Star Mark filed the instant action on August 3, 2007. Star Mark raised several claims challenging registration of the Koon Chun Mark. Koon Chun registered the Koon Chun Mark in 1986, at which point claims attacking the registration began to accrue. Any such claims should have been filed no later than 1992. Accordingly, the following claims are time-barred by more than seventeen years: (i) declaratory judgment that the Koon Chun Mark is not registrable, pursuant to 15 U.S.C. § 1051, (ii) declaratory judgment that the Koon Chun Mark is not registrable, pursuant to 15 U.S.C. § 1052, and (iii) cancellation of the Koon Chun Mark, pursuant to 15 U.S.C. §§ 1064(3), 1127.

The analysis required for determining the timeliness of Star Mark's fraud-related claims is slightly more complicated as Star Mark does not specify the fraudulent conduct upon which they base their deception claims. To the extent that Star Mark's claims are premised upon Koon Chun's alleged fraudulent

---

[2]     The court notes that Star Mark failed to address whether their claims were barred by the relevant statutes of limitation.

procurement of the registration, the claims are untimely.  Koon
Chun registered the Koon Chun Mark in 1986 -- in a public filing
-- and began selling its hoisin sauce (lacking fish and seafood
as ingredients) shortly thereafter.  Under the six-year statute,
the claims accrued in 1986, when Koon Chun procured its
trademark and began engaging in its allegedly deceptive sales of
hoisin sauce.  Even under the more generous "could-have-
discovered" two-year statute, the claims remain untimely.  Koon
Chun's customers could have discovered the alleged fraud simply
by glancing at the ingredient list contained on the hoisin sauce
labels at the time of purchase or shortly thereafter and then
commenced a timely action.

To the extent that Star Mark's fraud-related claims
stem from the formation of its buyer-seller relationship with
Koon Chun, the claims are untimely.  It is undisputed that the
relationship commenced in March 2002.  (*See* Def. Mot. for Sanc.
at 16.)  Under the six-year statute, the claims accrued in March
2002, when Koon Chun would have made representations to Star
Mark regarding its hoisin sauce and when Star Mark began
purchasing the hoisin sauce.  Likewise, under the two-year
statute, the claims are barred.  Each can of Koon Chun hoisin
sauce is labeled with the ingredient list and Star Mark could
have discovered this alleged deception with minimal diligence (a
review of the ingredient list) at the inception of their

relationship. Moreover, Star Mark certainly should have discovered the alleged fraud by June 3, 2004, the time Koon Chun commenced the First Action. The issue in that case was whether Star Mark sold counterfeit hoisin sauce. It is difficult to conceive of how Star Mark failed, within the first two years of litigation or during the extensive discovery that ensued in the First Action, to learn of the hoisin sauce ingredients as they are disclosed on the product label and the product label was central to that case.

Accordingly, the following fraud-related claims are time-barred: (i) cancellation of the Koon Chun Mark for fraudulent procurement, pursuant to 15 U.S.C. § 1064(3), and (v) deceptive acts and practices, in violation of New York General Obligation Law § 349.

### 4. Star Mark's Claims

Star Mark contends that the Koon Chun Mark should be cancelled and declared invalid because Koon Chun has (i) abandoned it, and (ii) materially altered its use. In support of these contentions, Star Mark asserts that Koon Chun's inclusion of various product names and their respective ingredient lists and weights on product labels demonstrates that Koon Chun has both abandoned the Koon Chun Mark (as originally

filed) and materially altered the Koon Chun Mark. (*See* Compl. ¶¶ 21-22, 26-28, 34-38; Pl. Opp. at 11-21.)

These claims are entirely lacking in merit. Koon Chun has used the Koon Chun Mark in precisely the same manner for which it sought registration. In its registration application, Koon Chun submitted sample labels which displayed the Koon Chun Mark inside of a blue trapezoid and then a second blue trapezoid that mirror-imaged the first. In its application, Koon Chun indicated that its mark would be used in connection with the sale of Chinese seasonings, sauces, and vinegars, as well as processed fruits and vegetables. Koon Chun did not provide the U.S. P.T.O. with a sample of the precise label for each product; rather, Koon Chun provided samples of general labels and then explained how it would insert the product name, weight, and nutritional value in product labels. The labels of the Koon Chun products actually sold, including hoisin sauce, display the Koon Chun Mark, the two blue trapezoids, and the specific product's name, weight, and ingredient list as Koon Chun described in its application with the U.S. P.T.O. (*See* Koon Chun U.S. P.T.O. Application, attached as Exhibit 1 to the Coppola Sanc. Decl.) Thus, Koon Chun has not used its mark in a manner that is inconsistent with its application.

Moreover, it is frivolous to suggest that Koon Chun's insertion of product name, weight, and nutritional value constitutes abandonment of the Koon Chun Mark or a material alteration of its use. Star Mark has provided no legal support for these contentions; nor was the court able to locate any precedent supporting Star Mark's position. It is likely that inclusion of this sort of information by manufacturers on a product label is a non-issue and has merited little attention as manufacturers of food products are required by federal law to provide such information to consumers. *See* 21 C.F.R. §§ 101.4 (requiring disclosure of ingredients), 101.5 (requiring disclosure of product name and manufacturer), and 101.9 (requiring disclosure of nutritional value). Thus, it is inconceivable that a litigant would seek to invalidate a trademark on these grounds.

### 5. Standing

"The Lanham Act allows for cancellation of a . . . registration by anyone 'who believes that he is or will be damaged . . . by the registration.'" *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000) (quoting 15 U.S.C. § 1064). A party seeking cancellation must establish that (i) it has standing, and (ii) there are valid grounds for canceling the registration. *See, e.g.*, *Cunningham*, 222 F.3d at 945.

"Standing is the more liberal of the two elements and requires only that the party seeking cancellation believe that it is likely to be damaged by the registration." *Id*. A belief of likely damage can be shown by "establishing a direct commercial interest." *Id*.

Turning to the instant action, none of the Star Mark plaintiffs have standing. Star Mark Management, Inc. became a defunct corporation prior to the commencement of this action. Likewise, Great Mark no longer operates and Jimmy Zhan (a/k/a Yi Q. Zhan) is unemployed. Thus, none of the Star Mark plaintiffs have a direct commercial interest in the outcome of this case. Contrary to Star Mark's contention, cases involving parties seeking trademark cancellation who do not own any marks, but have been sued for infringement by a trademark holder, thereby giving them a legitimate basis for standing, are inapplicable. It is the potential for liability that provides standing to those parties. Here, Star Mark's liability was conclusively established in the First Action. Likewise, Star Mark has no direct commercial interest in this case. Star Mark seeks to assert the deception-related claims on behalf of individuals who purchase the hoisin sauce for their own consumption or restaurant use. Star Mark has not alleged that they fall under either of these categories of consumers. Accordingly, Star Mark failed to establish standing under the Lanham Act.

## II. Sanctions

Under Rule 11, attorneys or unrepresented parties "presenting to the court a pleading, written motion, or other paper" must certify to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that their submission is:

> (1) not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on belief or a lack of information.

Fed. R. Civ. P. 11(b). To avoid the risk of sanctions, an attorney filing a complaint must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005)

(citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

To resolve Rule 11 motions, courts in this circuit apply an objective reasonableness standard. "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Simon DeBartolo Group v. Richard E. Jacobs Group, Inc.* 186 F.3d 157, 167 (2d Cir. 1999); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) ("Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success.") (internal quotation marks and citations omitted). The Second Circuit has explained, however, that the objective standard is also "intended to eliminate any 'empty-head-pure-heart' justification for patently frivolous arguments." *Simon DeBartolo Group*, 186 F.3d at 166 (quoting Fed. R. Civ. P. 11 advisory committee note to 1993 amendments).

The imposition of sanctions against an attorney found to violate Rule 11(b) is discretionary. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("Even if a district court concludes that the assertion of a given claim violates Rule 11, however, the decision of whether or not to impose sanctions is a matter for the court's discretion."). A court

that determines that sanctions are warranted may "award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Any sanction imposed for violation of Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

In the instant action, Star Mark filed a complaint that asserted five patently frivolous claims. As set forth above, all of the claims are barred by the doctrines of res judicata and collateral estoppel. All of the claims are barred by the relevant statutes of limitation. None of the plaintiffs have standing and the claims lack merit. Moreover, the initiation of this litigation was avoidable. Star Mark could have raised these claims as affirmative defenses and counterclaims in the First Action. There was nothing preventing litigation of these claims in the First Action, other than Star Mark's conscious choice to abandon litigation of these claims in that action in favor of filing a new action.

Finally, despite its independent obligation to determine whether its proposed claims had merit, Star Mark was advised of the frivolous nature of its claims and still proceeded. In discussing the merits of the proposed claims in

the First Action, Judge Gold indicated that "nothing [Star Mark's counsel had] said so far has explained to me what possible good faith basis there could be for [asserting the claims]." (Status Conf. Tr. at 14.)  He also explained in depth and on more than one occasion that on the face of Star Mark's assertions, the claims lacked merit. (*Id.* at 13-16.)  Further, Judge Gold repeatedly warned Star Mark's counsel of the potential for sanctions under § 1927 if Star Mark proceeded with the proposed motion for leave to amend the answer. (*Id.* at 14-17.)  Upon Star Mark's commencement of this action, pursuant to Rule 11(c) of the Federal Rules of Civil Procedure, Koon Chun provided notice to Star Mark of its intent to file a motion for sanctions pursuant to Rule 11.[3]

It is difficult for the court to envision a stronger case for the imposition of Rule 11 sanctions premised on the filing of a frivolous complaint than the instant action.  The Second Circuit permits the award of monetary sanctions against plaintiffs who file complaints barred by *res judicata*. *See Paganucci v. City of New York*, 993 F.2d 310, 312-313 (2d Cir. 1993) (holding that litigating claims barred by res judicata is "patently frivolous"); *see also Wynn v. AC Rochester Gen. Motors*

---

[3] As proscribed by Rule 11(c)(2) of the Federal Rules of Civil Procedure, Koon Chun sent Star Mark a warning letter specifying its grounds for seeking sanctions and provided a copy of its proposed notice of motion.  Koon Chun then waited more than twenty-one days to file its Rule 11 motion.  Koon Chun has complied with the procedural requirements for Rule 11 motions.

*Corp.*, 96 Fed. Appx. 768, 769 (2d Cir. 2004) (affirming imposition of a permanent injunction against a *pro se* plaintiff barring the filing of complaints without leave of the court in a case in which plaintiff's claims were barred by *res judicata* and the relevant statutes of limitation).

The circuit has approved of the imposition of monetary sanctions against plaintiffs who file complaints barred by statutes of limitation. *See Chemiakin v. Yefimov*, 932 F.2d 124, 131-132 (2d Cir. 1991) (affirming award imposing attorneys' fees and costs against a plaintiff for filing a frivolous complaint that, among other things, was barred by the statute of limitations); *see also Nyitray v. Johnson*, No. 99-7534, 1999 WL 1254077, at *1 (2d Cir. Dec. 15, 1999) (affirming an award of costs and one-third of attorneys' fees against a party who made a frivolous argument for timeliness under the statute of limitations).

The circuit does not hesitate to affirm monetary sanctions against plaintiffs who ignore warnings from courts and nonetheless file frivolous claims. *See Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (affirming imposition of a monetary sanction against a plaintiff who sought to amend her complaint to seek compensatory and punitive damages despite the court's earlier holding prohibiting such an amendment and

warning that such an action could subject her to sanctions). Likewise, the circuit has approved of the imposition of sanctions against a plaintiff who pursued a motion for reconsideration of dismissal, after the district court had expressly dismissed the complaint as frivolous, as the plaintiff was on notice of the frivolity the claim. *See Fox v. Boucher*, 794 F.2d 34, 37-38 (2d Cir. 1986) (affirming a monetary sanction against an attorney for filing a frivolous complaint and then seeking reconsideration of dismissal).

Accordingly, for all of the grounds stated above, the frivolous nature of the claims asserted in this action merit the imposition of attorneys' fees and costs against Star Mark and its counsel under Rule 11. Judge Gold repeatedly warned Star Mark of the frivolous nature of its claims. Opposing counsel served notice and gave Star Mark twenty-one days to withdraw the instant action. Yet, Star Mark persisted in pursuing the instant action. Koon Chun is directed to submit proof of the costs and attorneys' fees it has incurred in opposing this action including but not limited to receipts, invoices, contemporaneous time records, and all other information required by the Second Circuit for an award of fees and costs. The court declines to analyze the merits of sanctions under § 1927 as Koon Chun has successfully argued for the imposition of sanctions under Rule 11.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted.  Defendant's motion for sanctions pursuant to Rule 11 is granted against plaintiffs and their counsel to the extent that defendant seeks costs and reasonable attorneys' fees incurred in its defense of this action.  Defendant is directed to submit proof of its costs and attorneys' fees no later than September 30, 2009.


**SO ORDERED.**
Dated:     Brooklyn, New York
           September 8, 2009, 2009

                    _____/s/_____
                    **KIYO A. MATSUMOTO**
                    United States District Judge
                    Eastern District of New York