## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STAR MARK MANAGEMENT, INC., a New York corporation, GREAT MARK CORPORATION, a New York corporation, and JIMMY ZHAN a/k/a YI Q. ZHAN, individually and on behalf of Star Mark Management, Inc. and Great Mark Corporation,<br><br>       Plaintiffs,<br><br> -against-<br><br>KOON CHUN HING KEE SOY & SAUCE FACTORY, LTD., a company organized under the laws of Hong Kong,<br><br>       Defendant. | 07 Civ. 3208 (KAM)(SMG) |

---

### STAR MARK'S MEMORANDUM OF LAW IN OPPOSITION TO KOON CHUN'S MOTION FOR ATTORNEY'S FEES AND COSTS AND PRE- AND POST-JUDGMENT INTEREST PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

---

LAW OFFICES OF BING LI, LLC
1350 Broadway, Suite 1001
New York, NY 10018-0947
(212) 967-7690
Attorneys for Plaintiffs
Star Mark Management, Inc.,
Great Mark Corporation and
Jimmy Zhan

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ............................................................................................... 1

Point I
The Purpose Of Rule 11 Is Deterrence, Not Compensation,
And A Nonmonetary Or Partial Reimbursement Of Fees In
This Case Is Sufficient To Deter Repetition Of The Conduct
Or Comparable Conduct By Others Similarly Situated. ......................................... 1

Point II
Koon Chun's Fees And Costs Are Excessive And Unreasonable. ......................... 6

A.      Koon Chun Fails To Overcome The Simmons Presumption. ................... 7

B.      Koon Chun Counsel's Hourly Rates Are Not Reasonable. ....................... 12

C.      The Total Hours Expended Are Duplicative, Redundant
        And Unnecessary. ..................................................................... 15

D.      The Total Amount Of Fees Is Unreasonable And Excessive
        On Its Face. ............................................................................ 17

        1.      The total time expended in making the Rule 12(c)
                and Rule 11 motions is unreasonable and excessive. ................... 17

        2.      The total time expended in replying to Star Mark's
                opposition to the motions is unreasonable and excessive. ............. 19

        3.      The total time expended in preparing for the 4/9/2009
                oral argument on the motions is unreasonable and excessive. ....... 20

        4.      The total time expended in making the instant
                motion for fees is unreasonable and excessive. .............................. 20

E.      Koon Chun Counsel's Fees Should Be Reduced For
        Their Vague And Incomplete Entries And Block Billing. ........................ 21

F.      The Application Of The Johnson Factors Warrants The
        Requested Reduction Of Total Hours And Fees. ........................................ 24

Point III
Koon Chun Is Not Entitled To The Full Amount Of
Legal Research Charges.  ........................................................................................  28

Point IV
The Court Should Not Award Prejudgment Interest.  .............................................  29

CONCLUSION................................................................................................................  30

## TABLE OF AUTHORITIES

### STATUTES AND RULES

Federal Rules of Civil Procedure Rule 11 .......................................................... 1-6
Federal Rules of Civil Procedure Rule 11(c)(4) ................................................ 1
The Advisory Committee Notes to Rule 11 ...................................................... 2-5

### CASES

AHVRAM v. Bank Austria Creditanstalt
No. 04 Civ. 3600(SWK), 2005 WL 3099592 (S.D.N.Y. Nov. 17, 2005) ........................ 25

American Honda Motor Co. v. Two Wheel Corp.
918 F.2d 1060 (2d Cir.1990) ...................................................... 29

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany
522 F.3d 182 (2d Cir.2008), superseding 493 F.3d 110 (2d Cir.2007),
superseding 484 F.3d 162 (2d Cir.2007) ............................................. 7,8

Avirgan v. Hull
932 F.2d 1572 (11th Cir. 1991) ...................................................... 27

Baruch v. Healthcare Receivable Mgmt., Inc.
No.05-CV-5392 (CPS)(JMA), 2007 WL 3232090 (E.D.N.Y. Oct. 30, 2007) ................. 11

BASF Corp. v. Old World Trading Company
839 F.Supp. 528 (N.D.Ill.1993) ...................................................... 29

Borowski v. Deputy, Inc.
876 F.2d 1339 (7th Cir.1989) ...................................................... 4

Brandt v. Schal Associates, Inc.
960 F.2d 640 (7th Cir.1992) ...................................................... 3

Brandt v. Schal Associates, Inc.
960 F.2d 640 (7th Cir.1992) ...................................................... 27,29

Clairol Inc. v. Save-Way Industries, Inc.
211 U.S.P.Q. 223, 1980 WL 30303 (S.D.Fla. Aug. 8, 1980) ......................... 12

Duverger v. C & C Duplicators, Inc.
No. 08 Civ. 0721 (DRH)(ARL), 2009 WL 1813229 (E.D.N.Y. Jun. 25, 2009) ............... 11

Entral Group Int'l LLC v. Sun Sports Bar Inc.

05 Civ. 4836 (CBA), 2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007) .............................. 19

Fleishman v. Hyman
No. 00 CV 000009 (GBD)(KNF), 2006 WL 2372279 (S.D.N.Y. Aug. 16, 2006) ............ 18

Gelfman Intern. Enterprises v. Miami Sun Intern. Corp.
No. 05-CV-3826 (CPS)(RML), 2009 WL 2957849 (E.D.N.Y. Sept. 10, 2009) ............... 1

Gonzalez v. Bratton
147 F.Supp.2d 180 (S.D.N.Y.2003) .................................................................... 22

Grant v. Martinez
973 F.2d 96 (2d Cir.1992), cert. denied, 506 U.S. 1053 (1993) ........................................ 7

Hays and Gorenstein Enterprises v. Quality Care-USA, Inc.
874 F.2d 431 (7th Cir.1989) ............................................................................. 4

Hensley v. Eckerhart
461 U.S. 424 (1983) ........................................................................................ 7,21

Johnson v. Georgia Highway Express, Inc.
488 F.2d 714 (5th Cir.1974) ............................................................................. 7,24

King v. Farris
No.08 CV-186 (CAR), 2009 WL 2143790 (M.D.Ga. Jul. 14, 2009) ................................. 18

Kirk Capital Corp. v. Bailey
16 F.3d 1485 (8th Cir.1994) ............................................................................. 17,20

Kirsch v. Fleet Street, Ltd.
148 F.3d 149 (2d Cir.1998) ............................................................................. 21,22,23

Knip v. Skinner
19F.3d 72 (2d Cir.1994) ................................................................................. 2

Lucky Brands Dungarees, Inc. v. Ally Apparel Resources, LLC
05 Civ. 6757 (LTS)(MHD), 2009 WL 466136 (S.D.N.Y. Feb. 25, 2009) ....................... 16

Lunday v. City of Albany
42 F.3d 131 (2d Cir.1994) ............................................................................... 7

Margel v. E.G.L. Gem Lab Ltd.
04 Civ. 1514 (PAC)(HBP), 2009 WL 302069 (S.D.N.Y. Feb. 6, 2009) ......................... 16

Microsoft Corp. v. Computer Care Center, Inc.
No. 06 Civ. 1429 (SLT), 2008 WL 417965 (E.D.N.Y. Sept. 10, 2008) .......................... 8

Miroglio S.P.A. v. Conway Stores, Inc.
05 Civ. 121 (BSJ)(GWG), 2009 WL 1490546 (S.D.N.Y. Jun. 22, 2009) ............... 21,22,23

Moran v. Sasso
No. 05 Civ. 4716 (DRH), 2009 WL 1940785 (E.D.N.Y. Jul. 2, 2009) ............................ 11

New York Ass'n for Retarded Children v. Carey
711 F.2d 1136 (2d Cir.1983) ........................................................................................ 14,21

Nike, Inc. v. Top Brand Co.
2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006)
(Reprt and Recommendation), adopted by
2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006) ...................................................................... 7

Nu-Life COnstr. Corp. v. Bd. of Educ. of City of N.Y.
795 F.Supp. 602 (E.D.N.Y.1992) ..................................................................................... 21

Pointer Letter
146 F.R.D. 401(1993) ...................................................................................................... 3

Protection One Alarm Monitoring, Inc. v.
Executive Protection One Security Service, LLC
553 F.Supp.2d 201 (E.D.N.Y.2008) ........................................................…… 14,15

Rady Children Hospital v. Service Employees International Union
No. 07 cv 1173 (BTM)(AJB), 2008 WL 2545056 (S.D.Cal. Jun. 23, 2008) ................. 18,20

REFAC Int'l, Ltd. v. Hitachi Ltd.
141 F.R.D. 281 (C.D.Cal.1991) ........................................................................................ 26

Scholastic, Inc. v. Stouffer
246 F.Supp.2d 355 (S.D.N.Y.2003) ................................................................................. 19

Schottenstein v. Schottenstein
230 F.R.D. 355 (S.D.N.Y.2005) ........................................................................................ 5

Sea Spa Holdings, Ltd. v. Fali Fin Group, Inc.
277 F.Supp.2d 323 (S.D.N.Y.2003) ................................................................................. 22

Simmons v. New York City Transit Authority
575 F.3d 170 (2d Cir.2009) ....................................................... 7,8,9,11,12,14,15,25

Skidmore Energy, Inc. v. KPMG
455 F.3d 564 (5th Cir.2006) ............................................................................................ 28

Spalluto v. Trump Int'l Hotel & Tower
2008 WL 4525372 (S.D.N.Y. Oct. 2, 2008) ................................................................ 21,22

The New York State Society of Certified Public Accountants v.
Eric Louis Associates, Inc.
79 F.Supp.2d 331 (S.D.N.Y.1999) ...................................................................... 19

Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.
No. 07-CV-656 (FB)(KAM), 2007 WL 4324019 (E.D.N.Y. Dec. 7, 2007) ...................... 11

Vollmer v. Publishers Clearing House
248 F.3d 698 (7th Cir.2001) ............................................................................. 2

## PRELIMINARY STATEMENT

Plaintiffs Star Mark Management, Inc., Great Mark Corporation, and Jimmy Zhan a/k/a Yi Q. Zhan (collectively "Star Mark") and its counsel respectfully submit this Memorandum of Law in opposition to the motion submitted by defendant Koon Chun Hing Kee Soy & Sauce Factory, Ltd. ("Koon Chun") for attorney's fees and expenses and prejudgment interest pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). For the purposes of this opposition, the Declarations of Jimmy Zhan and the Declaration of Bing Li made the 19th day of October, 2009 respectively ("Zhan Decl." and "Li Decl."), together with the exhibits annexed thereto, are contemporaneously submitted herewith.

## ARGUMENT

## POINT I

### THE PURPOSE OF RULE 11 IS DETERRENCE, NOT COMPENSATION, AND A NONMONETARY OR PARTIAL REIMBURSEMENT OF FEES IN THIS CASE IS SUFFICIENT TO DETER REPETITION OF THE CONDUCT OR COMPARABLE CONDUCT BY OTHERS SIMILARLY SITUATED.

Star Mark and its counsel respectfully submit that a nonmonetary or partial reimbursement of fees in this case is sufficient to deter plaintiffs and counsel and others similarly situated from repeating the conduct that the Court has found violated Rule 11.

"'In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action.'" Gelfman Intern. Enterprises v. Miami Sun Intern. Corp., No. 05-CV-3826 (CPS)(RML), 2009 WL 2957849, at *4 (E.D.N.Y. Sept. 10, 2009) (citations omitted).

Rule 11(c)(4), "Nature of a Sanction," provides as follows:

> A sanction imposed under this rule **must** be limited to what **suffices to deter** repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include non-monetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.  [emphasis added]

Rule 11 was amended in 1993.  The Advisory Committee Notes provide for the "Purpose of Revision" as follows:

> **Purpose of revision.** This revision is intended to remedy problems that have arisen in the interpretation and application of the 1983 revision of the rule. ...
>
> The rule retains the principle that attorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1.  The revision broadens the scope of this obligation, but places **greater constraints** on the imposition of sanctions and should reduce the number of motions for sanctions presented to the court.  **New subdivision (d)** removes from the ambit of this rule all discovery requests, responses, objections, and motions subject to the provisions of Rule 26 through 37.  [emphasis added]

Regarding Subdivision (b) and (c) of the Rule, the Advisory Committee Notes to the 1993 Amendment also provide that "[s]ince the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." Id.  "Thus, under the amended version, the imposition of sanctions for a Rule 11 violation is discretionary rather than **mandatory**." See Knip v. Skinner, 19F.3d 72, 78 (2d Cir.1994) (emphasis added) (concluding that "a just and practicable application of the amended Rule 11 requires that the district court be afforded an opportunity to exercise its discretion whether to impose sanctions under the amended version"); see also Vollmer v. Publishers Clearing House, 248 F.3d 698, 711, fn. 11 (7th Cir.2001) ("We have noted that Rule 11(c)(2) was amended to limit the extent that attorneys' fees may be used as a measure of sanctions, so as to more precisely focus on the Rule's

primary goal of deterrence.") (citations omitted); <u>Pointer Letter</u>, 146 F.R.D. 401, 524 (1993) ("The most frequent criticism has been that the revision leaves in place the current mandate that some sanction be imposed if the court determines that the rule has been violated.").

Judge Sam C. Pointer, Chairman of the Advisory Committee, wrote a letter in May 1992 describing the work and conclusions of the Advisory Committee.  In the letter, Judge Pointer stated (<u>id.</u>):

> The Advisory Committee agrees with the premise that cost-shifting has created the incentive for many unnecessary Rule 11 motions, has too frequently been selected as the sanctions, and indeed, has led to the large awards most often cited by critics of the 1983 rule.  ...  The Committee has, however, made a further change in the text of subdivision (c)(2) to **emphasize** that cost-shifting awards should be the **exception**, rather than the norm, for sanctions.  [emphasis added]

Koon Chun relies on a Seventh Circuit case, <u>Brandt v. Schal Associates, Inc.</u>, 960 F.2d 640 (7th Cir.1992), for the proposition that "compensation is another import [sic.] objective and purpose of Rule 11."  Defendant's Memorandum of Law in Support of Its Motion for Attorney's Fees and Expenses and Post-Judgment Interest dated September 30, 2009 ("KC Mem."), at 2.  However, <u>Brandt</u> is a pre-1993 Amendment case and obviously did not consider the Advisory Committee's express purpose in revising the Rule or the stated objectives by the 1993 Amendment, such as the removal of the "mandatory" sanction provision; the "exception versus norm" rational for cost-shifting under the Rule and the 21 day safe-harbor provision.  As such, <u>Brandt</u> is not persuasive authority on this Court relating to this issue.[1]

---

[1] In Footnote 2 of its Memorandum, Koon Chun also comments on the Court's decline to determine its sanction motion under § 1927, contending that had the Court done that it would have found Star Mark and its counsel had violated this section as well.  However, as Star Mark argued in its opposition, even had the Court continued to analyze the § 1927 sanction, the Court would not have been satisfied that Star Mark and counsel acted in "bad faith" in filing the second action within the meaning of the statute and the legislative intent "to deter unnecessary delays in litigation."

The other case cited by Koon Chun, Borowski v. Deputy, Inc., 876 F.2d 1339 (7th Cir.1989) citing Hays and Gorenstein Enterprises v. Quality Care-USA, Inc.,[2] 874 F.2d 431 (7th Cir.1989) for the proposition of "make-whole" remedy under Rule 11, is also a pre-1993 Amendment case and similarly is not persuasive authority on this Court relating to the issue in question.  In addition, Circuit Judge Cudahy, sitting on the three-member panel, dissented as to the majority's very "make-whole" rationale.  Judge Cudahy opined as follows:

> I do not believe, however, that No. 89-1014, which involves a challenge to the *amount* of the Rule 11 fee award, is controlled by *Hay v. Sony Corp. of America,* 847 F.2d 412, 419 (7th Cir.1988), and *Gorenstein Enterprise, Inc. v. Quality Care-USA, Inc., 874* F.2d 431 (7th Cir.1989).  I therefore respectfully dissent as to No. 89-1014 and the award of $6,931.31 involved in that case.
> ...
>
> The majority's holding essentially means that, once conduct has been found to be sanctionable, the sanctioned party must acquiesce in his victim's request for fees, whatever the amount, on pain of suffering the imposition of additional sanctions attendant to a good-faith challenge to the amount of fees requested.  On this point, the majority result seems to me in conflict with *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir.1988), which holds that sanctions should not be awarded as a matter of course in connection with a hearing set to determine the amount of allowable fees.  *Glass* allowed an award of such sanctions merely because in that case the sanctioned party was found to be guilty of dilatory or abusive tactics or bad faith.  No such finding has been made here.

The Advisory Committee Notes to 1993 Amendment also "specially note" "the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances," as follows:

> [1] Whether the improper conduct was willful, or negligent; [2] whether it was part of a pattern of activity, or an isolated event; [3] whether it infected the entire pleading, or only one particular count or defense; [4] whether the person

---

[2] Koon Chun mistakenly merges two separate cases cited by the Borowski Court, Hay v. Sony Corp. of America, 847 F.2d 412 (7th Cir.1988) and Gorenstein Enterprise, Inc. v. Quality Care-USA, Inc., 874 F.2d 431 (7th Cir.1989).

has engaged in similar conduct in other litigation; [5] whether it was intended to injure; [6] what effect it had on the litigation process in time or expense; [7] whether the responsible person is trained in the law; [8] what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [9] what amount is needed to deter similar activity by other litigants[.]

In addition to the factors listed by the Advisory Committee, courts also consider whether the aggrieved party "suffered a severe financial hardship in defending the[] claims" in violating Rule 11.  See Schottenstein v. Schottenstein, 230 F.R.D. 355, 362 (S.D.N.Y.2005) (noting that the aggrieved party, a wealthy real estate developer, did not argue that he suffered a severe financial hardship in defending plaintiff's frivolous claims and that he had fought in a prior divorce case for six years).

In light of the principles governing what sanctions a court may impose upon finding violation of Rule 11 and applying the nine Committee factors and the Schottenstein severe financial hardship analysis, the Court is requested not to impose any monetary sanctions upon Star Mark or its counsel.  The filing of the Second Action was not willful; the Rule 11 violation was not part of a pattern of activity; Star Mark and its counsel have not engaged in similar conduct in any other litigation[3]; the Second Action was not intended to injure; Star Mark and counsel have limited financial resources; and as Star Mark has previously submitted to the Court in its opposition to Koon Chun's Rule 11 motion, there is no similar conduct in other litigation.[4]  (Zhan Decl., ¶ 4; Li Decl., ¶ 11)  Furthermore, under Schottenstein, Koon

_____

[3] Indeed, as shown in Judge Doyne's 11/18/05 decision (Li Decl., Ex. F) counsel has been recognized for his zealous advocacy of his client's interests.

[4] Koon Chun counsel's time record indicates that one out of vaguely recorded numerous hours of legal research was billed for specifically researching the issue in question: "Legal research re defendants' right to file a new case after an order from previous case threatening sanctions if counterclaim was going to be filed."  See Attorney Choi time 4/16/2008, Invoice Date 4/30/2008, Invoice No. GL-0570229-IN.  Nonetheless, Koon Chun did not present an authority in point in its motion papers.

Chun does not argue that it has suffered "a severe financial hardship in defending plaintiff's frivolous claims."

Accordingly, the Court is requested not to impose a monetary sanction; or alternatively, impose a monetary sanction of partial reimbursement of Koon Chun's fees and allocate such liability equally (50%-50%) between Star Mark and its counsel.[5]

## POINT II

### KOON CHUN'S FEES AND COSTS ARE EXCESSIVE AND UNREASONABLE.

For answering a complaint containing Star Mark's previously proposed counterclaims challenging the registration and cancellation of Koon Chun's trademark and making the Rule 12(c) and Rule 11 motions, Koon Chun counsel billed a total of 355.85 hours of attorney's time and 51.90 hours of paralegals' time, amounting to $150,069.50 in legal fees and $6,583.01 in expenses, and seeks a monetary sanction of $162,247.32, including $5,594.81 for prejudgment interest.  KC Mem. at 1.

For the reasons stated herein, the Court is requested to reject the total amount of fees and expenses and deny prejudgment interest on the ground they are excessive and unreasonable.  Instead, Star Mark and counsel respectfully request that the Court find the amount of **$43,233.00** to be reasonable attorney's fees which are commensurate with the work performed and that the Court allocate the liability equally between Star Mark and its counsel for the amount.[6]

---

[5] Star Mark and its principal, Jimmy Zhan, have been fully advised of the apparent and potential conflict of interest in this position and have also been advised to seek opinion of independent counsel in compliance with Rule 1.7 of the New York Rules of Professional Conduct (eff. 4/1/2009).  Star Mark and its principal consent and agree to the position stated herein.  See Zhan Decl., ¶ 3.

[6] Id.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir.2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)), superseding 493 F.3d 110 (2d Cir.2007), superseding 484 F.3d 162 (2d Cir.2007).  This figure has commonly been referred to as the "lodestar"--a term that Arbor Hill disavowed in favor of "presumptively reasonable fee," determined by considering all relevant factors including those laid out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974) (the "Johnson factors"), with the district courts expected to "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir.1994).  The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.1992) (citation omitted), cert. denied, 506 U.S. 1053 (1993); accord Nike, Inc. v. Top Brand Co., 2006 WL 2946472, at *5 (S.D.N.Y. Feb. 27, 2006) (Reprt and Recommendation), adopted by 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006).

**A.  Koon Chun fails to overcome the Simmons presumption.**

In a recent decision dated August 3, 2009, the Second Circuit in Simmons v. New York City Transit Authority, 575 F.3d 170, 175-76 (2d Cir.2009) clarified its prior holding set

forth in <u>Arbor Hill</u> regarding application of the forum rule and announced a new standard for its application:

> We now hold that, when faced with a request for an award of higher out-of-district rates, a district court **must** first apply a **presumption** in favor of application of the forum rule.  In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.  In determining whether a litigant has established such a likelihood, the district court **must** consider experience-based, **objective** factors.  Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise.  A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel.  Lawyers can achieve prestige and fame in numerous ways that do not necessarily translate into better results.  The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.  ... [emphasis added]

The Second Circuit, applying the new standard, reduced a Manhattan-based attorney's fees by 21 percent, from $213,000 to $168,000, on the ground plaintiff failed to overcome the presumption.  The Court reasoned:

> While Simmons cannot be faulted for wanting to retain counsel with the best possible reputation, it is not the TA's responsibility to compensate for such counsel based on higher out-of-district rates where Simmons has not shown that they were likely to produce a substantially better result than **competent counsel in the Eastern District would produce for less**--in this case, substantially less--**money**.  The TA should not be required to pay for a limousine when a sedan could have done the job.  [emphasis added]

Koon Chun's counsel cite <u>Microsoft Corp. v. Computer Care Center, Inc.</u>, No. 06 Civ. 1429 (SLT), 2008 WL 4179653, at *14 (E.D.N.Y. Sept. 10, 2008) for the purported proposition that "federal courts in Brooklyn often look to hourly rates approved in Southern District of New York for comparison."  KC Mem., at 5.  However, as this position is inconsistent with <u>Simmons</u>, it has no authoritative weight on this Court on this issue.

Koon Chun fails to overcome the presumption required by <u>Simmons</u> in favor of application of the forum rule.  Instead, the four reasons listed in paragraph 13 of the Declaration of Raymond Chan dated September 29, 2009 ("Chan Decl.") are all "subjective" rather than "objective" factors in retaining the AFS firm.  These subjective factors are anything but the reason that retaining the AFS firm "would likely (not just possibly) produce a substantially better net result."  There is no showing that a competent counsel in this District would be unable to understand the interrelation of this action to the First Action or to use the evidence presented in the First Action to this action.  Chan Decl., ¶ 13 (factors (1), (2) and (3) in retaining the AFS firm).  In fact, being able to understand the history of the prior litigation and apply the evidence to the present action is a fundamental quality of any competent litigation attorney.  Furthermore, the evidence obtained in the First Action is largely irrelevant to the Second Action.

The fourth factor Mr. Chan states in support of its decision to retain the AFS firm--that "this action required in depth experience and knowledge of trademark laws, which I already knew AFS had"--contradicts what the AFS firm has done in this matter.  The motion for Rule 12(c) dismissal was mostly based on procedural arguments requiring general federal litigation skills and regarding the trademark specialty issue--whether the trademark as registered and used was materially altered or mutilated--Koon Chun's counsel did not rely on any established authority to support its position.

In fact, Koon Chun has already retained in-district general practice counsel to handle several other trademark infringement actions filed in this District.  The PACER record shows that from the time Koon Chun commenced its first ever trademark action against Star Mark in

June 2004, it has filed six other trademark infringement actions in this District, shown as

follows (Li Decl., Ex. A):

> 12/15/2004 <u>Koon Chun v. Yang Shing Trading Co. Inc.</u>, 04 Civ. 5442 (JG)(SMG),
> 04/06/2007 <u>Koon Chun v. Tung Ming Trading, Inc.</u>, 07 Civ. 1444 (JFB)(SMG),
> 06/26/2007 <u>Koon Chun v. Kun Fung USA Trading Co. Inc.</u>, 07 Civ. 2568 (CPS)(SMG),
> 08/03/2007 <u>Koon Chun v. Excelsior Trading Corp.</u>, 07 Civ. 3224 (CPS)(SMG),
> 09/17/2007 <u>Koon Chun v. Combo Trading Inc.</u>, 07 Civ. 3880 (CPS)(SMG),
> 09/11/2007 <u>Koon Chun v. Murray Int'l Trading Co., Inc.</u>, 07 Civ. 3781 (CPS)(SMG).

Except for <u>Yang Shing</u> which was represented by the AFS firm and was soon settled

and <u>Tung Ming</u> by a different attorney (David J. Hoffman, Esq.), the other four actions have

all been represented by Yuen Roccanova Seltzer & Sverd LLP (the "YRSS Firm") (Joseph T.

Roccanova, Esq. lead counsel).  While the PACER docket sheets list the YRSS firm's office at

132 Nassau Street, Suite 1300, New York, NY 10038, the website of the firm shows that it

also has its office in Long Island, 149 Main Street, Huntington, N.Y. 11743 and is obviously

aware of the prevailing rates charged in this District.  In addition, the "Firm Resume" page

identifies the YRSS Firm as a general practice firm as follows (Li Decl., Ex. B):

> A general practice suited to handle the majority of our clients' legal and civil
> litigation needs, our expertise extends to real estate practice, business disputes,
> immigration law, bodily injury and property damage claims, landlord-tenant
> law, insurance coverage disputes, municipal law, employment law, commercial
> matters, trademark law, condominium and co-op law, criminal, trusts and
> estate and family law.

An examination of the cases that have been handled by the YSRR firm shows that the

allegations are substantially similar to those made in the Star Mark First Action.  Koon Chun

does not explain as to why it requires counsel with "in depth experience and knowledge of

trademark laws" to handle this case but not for the other substantially similar ones.

As Koon Chun fails to make the "particularized showing" required by <u>Simmons</u>, the Court is requested to apply the forum rule and consider the prevailing market rates in the Eastern District of New York.

A research of the recent cases decided in this District indicates that the range of billing rates is **$200-$375** per hour for partners and **$100-$295** per hour for associates.  <u>See</u> e.g., <u>Moran v. Sasso</u>, No. 05 Civ. 4716 (DRH), 2009 WL 1940785, at *4 (E.D.N.Y. Jul. 2, 2009) ("In the Eastern District of New York, reasonable hourly rates have ranged from '$200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants.' ") (citations omitted); <u>Duverger v. C & C Duplicators, Inc.</u>, No. 08 Civ. 0721 (DRH)(ARL), 2009 WL 1813229, at *2 (E.D.N.Y. Jun. 25, 2009) ("Overall hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants.") (citations omitted); <u>Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.</u>, No. 07-CV-656 (FB)(KAM), 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (stating that the hourly rates approved in the Eastern District range from $200 to $375 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for paralegals); <u>Baruch v. Healthcare Receivable Mgmt., Inc.</u>, No.05-CV-5392 (CPS)(JMA), 2007 WL 3232090, at *5 (E.D.N.Y. Oct. 30, 2007) (finding that courts in this district have awarded partners hourly rates ranging from $200 to $375) (compiling cases).

Here, Koon Chun counsel's hourly rates are $450 for the founding partner Mr. Schwab; $350 from 2007 through January 31, 2008 and $420 from February 1, 2008 through 2009 for Mr. Coppola and Mr. Crisona; and $300 per hour from 2007 through January 31, 2008 and

- 11 -

$325 from February 1, 2008 for Mr. Choi.  Coppola Decl., ¶ 14.  Mr. Schwab has "44 years of experience in intellectual property law"; Mr. Coppola, a partner, "ha[s] been practicing intellectual property law continuously for 21 years since graduating law school"; Mr. Crisona, a partner, has "23 years of legal experience, mostly in intellectual property litigation"; and Mr. Choi, an associate, has "nearly 6 years of intellectual property law experience."  Id., ¶ 12. Comparing to the prevailing hourly rates in this District, the hourly rates are high and the Court is requested to adjust them as required by Simmons.

Therefore, considering the Simmons Court reduced the fees by 21% across-the-board in applying the forum rule and the prevailing rates in this District, the Court is requested to reduce Koon Chun counsel's hourly rates to $350/hour from $450 for Mr. Schwab, $300/hour from $420 for Messrs. Coppola and Crisona, $200/hour from $324 for Mr. Choi, and $70/hour from $90 for paralegals.  (Alternatively, for the reasons stated in Argument Point I(B) that follows, in the event the Court finds Koon Chun has overcome the Simmons presumption, the Court is also requested to find that the reduced hourly rates are warranted.)

**B.  Koon Chun Counsel's Hourly Rates Are Not Reasonable.**

Koon Chun counsel first justifies its high hourly rates by relying on a 1980 decision of the Southern District of Florida, Clairol Inc. v. Save-Way Industries, Inc., 211 U.S.P.Q. 223, 1980 WL 30303 (S.D.Fla. Aug. 8, 1980) that trademark litigation is a "particularly difficult field of specialization ... meriting ... greater than average rate."  KC Mem., at 6.  However, specialty means efficiency and effectiveness, which cannot be supported in this case by 355.85 hours of attorney's time and 51.90 hours of paralegals' time in answering a complaint challenging trademark registration and in making a Rule 12(c) motion to dismiss and Rule 11 motion for sanctions.  There is nothing extraordinary about the work performed by the AFS

firm in this matter which largely requires general federal litigation skills.  Koon Chun has

been and is still represented by the YRSS firm in four other trademark infringement matters in

this District, who holds itself as "a general practice" firm and its members "pride ourselves on

our tireless efforts to expeditiously and cost-effectively obtain the best possible results for our

clients."  (Li Decl., Ex. B)

Nor does the AFS's submission demonstrate that it has the alleged "specialized

practice" in trademark law.  The biographical information of the attorneys involved in this

mater (Coppola Decl., Ex. 6) does not reveal their specific qualifications and experience in

trademark law litigation, except that they appear to possess a science degree (B. Ch.E.,

B.S.Ch.E. and B.S.M.E.); they are all registered patent attorneys with the U.S.P.T.O.; and

they all have invariably engaged in patent law litigation and prosecution practice.  The

"Nature of Practice" for Mr. Coppola is indentified as "Litigation and Patent Law"; Mr.

Schwab "Patents; Intellectual Property Litigation; Licensing; Antitrust; Advertising Law"; Mr.

Crisona "Litigation"; and Mr. Choi "Litigation and Patent Prosecution."

That these attorneys may have specialized expertise in patent law does not appear in

serious doubt.  But patent law practice is distinguished from trademark and copyright law

practice not only because of the substantive laws involved, but also the special requirements

imposed on the practitioners.  Attorneys litigating patent law are licensed and registered with

the U.S. P.T.O. as patent attorney or agent (see https://oedci.uspto.gov/OEDCI/ for the list of

active patent attorneys and agents), whereas attorneys who practice trademark and copyright

litigation and prosecution are not.  It is not known how many trademark matters the lead

counsel and co-counsel have litigated or defended and it is not known how specialized they

are in trademark law litigation.

"Where the moving party fails to provide information on the attorney's and paralegal's backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested."  Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Service, LLC, 553 F.Supp.2d 201, 209 (E.D.N.Y.2008) (citations omitted); see also New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146-48 (2d Cir.1983), stating that to determine whether time was reasonably spent, the court must evaluate the tasks and the time documented in counsel's contemporaneous time records in light of its general experience and its experience with the case.

Koon Chun also relies on a ruling in the First Action made at a discovery related hearing on April 29, 2005 that Mr. Coppola's hourly rate of $350 was "not unreasonable rate for this specialty, a partner handling a litigation."  Pl. Mem. at 6.  However, that ruling does not have the law of the case effect because there was no fair opportunity for Star Mark to litigate the issue at that time; the Court assumed that Mr. Coppola had specialized qualifications and experience in trademark litigation; the discretionary award involved the application of the hourly rate was insignificant ($700); and the Simmons presumption was not in existence.

The other cases relied on by Koon Chun, Margel and Entral, Stevens and Yurman (KC Mem. at 6-7) all predate Simmons and therefore to the extent they did not analyze the Simmons presumption these cases are not persuasive authority on this Court on this issue.

In Protection Once, following entry of default judgment in favor of plaintiff in a trademark infringement action, plaintiff's counsel sought award of attorney's fees and costs. Attorney Pastore, the partner in charge of this matter, requested an hourly rate of $375 per hour and Attorney Kelly, an associate, $275.  The Court found that these attorneys "failed to

provide information regarding the experience levels of the attorneys who worked on the case," except by stating that their hourly rates are "based upon prevailing rates charged by attorneys in this community." Id., at 208-09. Distinguishing several cases relied on by the plaintiff's counsel where similar or even higher rates had been approved in trademark cases based on evidence of the qualifications and experience of the attorneys, the Court adopted Magistrate Judge Levy's recommendation and reduced the hourly rate from $375 to $300 for Attorney Pastore, a 20% reduction, and from $275 to $250 for Attorney Kelly, a 9.1% reduction, for their failure to provide information regarding their experience levels. The Court also adopted Judge Levy's recommendation and applied a thirty percent (30%) across-the-board reduction of the recalculated fees "to account for some vague entries and some duplicative and excessive work for this routine default matter." Id. at 209.

Here, as in Protection One, because Koon Chun's attorneys fail to provide specific information about their qualifications and experience in trademark law litigation, the Court is requested to reduce their hourly rates to $350/hour from $450 for Mr. Schwab, $300/hour from $420 for Messrs. Coppola and Crisona, $200/hour from $324 for Mr. Choi, and $70/hour from $90 for paralegals.

**C. The Total Hours Expended Are Duplicative, Redundant and Unnecessary.**

Koon Chun counsel contends that the 355.85 hours of attorney's time and 51.90 hours of paralegals' time are "reasonable and necessary" and justifies as follows:

> The lead counsel for Koon Chun properly assigned less critical tasks to associates counsel and clerical tasks to paralegals (e.g. significant amounts of legal research and preparation of some of the letters and motions to the court were performed by the associate counsel; the copying and the filling of papers, preparation of exhibits to motion papers, citation checking, and the compilation of the table of contents and the table of authorities were performed by the paralegals.

- 15 -

KC Mem., at 9.

The billing record, however, as its billing record submitted to Judge Gold in the First Action, presents far more serious problems and flaws than Koon Chun' counsel's assignments of "less critical" and/or "clerical" tasks in prosecuting this action.

"[I]f a court finds that claimed hours are 'excessive, redundant, or otherwise unnecessary,' it should exclude those hours from its ... calculation.  Margel v. E.G.L. Gem Lab Ltd., 04 Civ. 1514 (PAC)(HBP), 2009 WL 302069, at 2 (S.D.N.Y. Feb. 6, 2009) (citing Hensley and other district court cases) (emphasis added).  To determine how much attorney time should be compensated, 'the court looks to its own familiarity with the case and ... its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Lucky Brands Dungarees, Inc. v. Ally Apparel Resources, LLC, 05 Civ. 6757 (LTS)(MHD), 2009 WL 466136, at *1 (S.D.N.Y. Feb. 25, 2009) (citations omitted).  "If the court finds that some of the time was not reasonably necessary to the outcome, it should reduce the time for which compensation is awarded.  [citations omitted]  Such reductions are appropriate not only for work on unsuccessful claims and arguments, but also for inefficient or duplicative work." Id. (citations omitted)  "In reducing a claim for time spent, the court may 'use a percentage deduction 'as a practical means of trimming fat from a fee application.'" Id.

Koon Chun's time record shows that its counsel made the Rule 12(c) and Rule 11 motions twice and billed its time twice--once in February to May of 2008 billing 109.7 hours of attorney's time, and once in September to November of 2008 billing a total of 105.9 hours of attorney's time.  (Li Decl., Ex. C, Schedule 1 and 2 respectively)

The February-May, 2008 time record shows that the Rule 12(c) and Rule 11 motions were researched, drafted, edited (repeatedly), reviewed and completed.  In case of doubt, the

paralegal's time demonstrates that authority cites in the Memorandum for both motions were checked and shepardized, Table of Contents and Table of Authorities prepared, and exhibits to Mr. Coppola's Declarations organized and affixed.  (Li Dec., Ex. C, Schedule 1)

The September-November, 2008 time record shows that the time was billed for "editing" Rule 11 motion and "drafting" Rule 12(c) motion which had been edited and drafted in February-May, 2008.  The September-November 2008 time is clearly duplicative of the work done in February-May and should not be awarded as separate legal work performed. Accordingly, the Court is requested to deny the 105.35 hours for re-making the motions (September-November 2008 time).

### D.   The Total Amount of Fees Is Unreasonable and Excessive on Its Face.

The total amount of fees is unreasonable and excessive on its face, particularly for the AFS firm that claims trademark litigation experience and expertise.

#### 1.   The total time expended in making the Rule 12(c) and Rule 11 motions is unreasonable and excessive.

It is unreasonable for Koon Chun's counsel to use 109.7 hours, or 105.35 hours, in making the Rule 12(c) motion and for § 1927 sanction and the Rule 11(c) sanction, let alone a combined total of 215.05 hours and another 11 hours billed in December 2007-January 2008 (Li Decl., Ex. C, Schedule 3) for drafting a Rule 11 letter to Star Mark.

Koon Chun's Rule 11 motion for sanctions is substantially based on the arguments made in its Rule 12(c) motion to dismiss and its § 1927 sanction motion is simply a rehashed version of its Rule 11(c) motion.

The Eighth Circuit has long observed something "very inconsistent" between a Rule 11 moving party's assertion that a complaint was frivolous and the 279 hours of legal work performed to dismiss the complaint.  In <u>Kirk Capital Corp. v. Bailey</u>, 16 F.3d 1485, 1491 (8th

Cir.1994), the district court found that plaintiff's civil right complaint against the Trustees for Missouri State Employees' Retirement System was not well grounded in law and imposed Rule 11 sanctions but deducted 100 hours from the defendants' total 279.10 hours in moving to dismiss the complaint and for Rule 11 sanctions.  On appeal, the Eighth Circuit further reduced the already reduced time to 50 hours for making the motion to dismiss and 25 hours for prosecuting the Rule 11 motion.  The Court stated:

> On the face of it, there is something very inconsistent with the assertion that the plaintiffs filed a patently frivolous complaint meriting sanctions under Rule 11 and contending it took 279.10 hours or even 179.10 hours of legal work in order to reveal what defendants contend is obvious.

In <u>Fleishman v. Hyman</u>, No. 00 CV 000009 (GBD)(KNF), 2006 WL 2372279 (S.D.N.Y. Aug. 16, 2006), a case involving claims of usury and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, <u>et seq</u>., the Court found that 59.10 hours were reasonably expended by the defendants' attorneys in brining their motions to dismiss and application for Rule 11 sanctions.

In <u>King v. Farris</u>, No.08 CV-186 (CAR), 2009 WL 2143790 (M.D.Ga. Jul. 14, 2009), a case involving plaintiff's suit first filed in state court alleging defendants were guilty of violating federal statutes 42 U.S.C. §§ 1983, 1988 and 1991, the Fourteenth and Fourth Amendments of the United States Constitution, federal RICO statutes and the Georgia Constitution, the Court found that 29.5 hours of legal work was a reasonable amount of time to spend defending this case, which included removing the case to the federal court and moving to dismiss and responding to Plaintiff's motion to remand.

In <u>Rady Children Hospital v. Service Employees International Union</u>, No. 07 cv 1173 (BTM)(AJB), 2008 WL 2545056 (S.D.Cal. Jun. 23, 2008), the Court found that 46.25 hours of time billed by the defendants in connection with co-defendant United Healthcare Workers-

West's ("UHW") motion to dismiss and Rule 11 motion for sanctions were reasonable.  The Court, however, denied UHW's request for additional time spent in drafting a reply because the reply was not necessary and did not aid the Court in its resolution of the issues.

In Entral Group Int'l LLC v. Sun Sports Bar Inc., 05 Civ. 4836 (CBA), 2007 WL 2891419, at *11 (E.D.N.Y. Sept. 28, 2007), the Court found that a total of 132 hours spent in preparing a copyright infringement complaint and motions for a temporary restraining order, preliminary injunction order and an order of impoundment in a copyright infringement action "is unreasonable and excessive, particularly for counsel claiming experience in copyright litigation."  As a result, the Court reduced the fees by 40%.  See also The New York State Society of Certified Public Accountants v. Eric Louis Associates, Inc., 79 F.Supp.2d 331 (S.D.N.Y.1999), holding that the time spent by a trademark plaintiff's counsel on basic research into the Lanham Act and local circuit injunction standards was excessive, given counsel's intellectual property law specialization, warranting fifteen percent reduction in lodestar fee; Scholastic, Inc. v. Stouffer, 246 F.Supp.2d 355 (S.D.N.Y.2003), reducing attorney's fees by two thirds, finding that billing for 135.4 hours by law firm in preparing declaration of a third-party fact witness was excessive even though the declaration contained significant factual evidence.

Accordingly, the Court is requested to reduce the 109.7 hours by at least a third (1/3) to 72.87.

### 2.   The total time expended in replying to Star Mark's opposition to the motions is unreasonable and excessive.

Koon Chun's counsel billed a total of 47 hours in responding to Star Mark's opposition to the Rule 12(c) and Rule 11 motions, representing 37 hours for Mr. Coppola; 5.3 hours for Mr. Crisona; and 4.7 hours for Mr. Choi.  (Li Decl., Ex. C, Schedule 4)  These 47

hours should be reduced by at least one half (1/2) to 23.50 hours because the reply was not necessary and did not substantially aid the Court in its resolution of the issues.  See Rady Children Hospital, 2008 WL 2545056.  Alternatively, a total of 47 hours spent in replying Star Mark's opposition to the motions is unreasonable and is inconsistent with Koon Chun's position that Star Mark's complaint was patently frivolous.  Bailey, 16 F.3d at 1491.

### 3. The total time expended in preparing for the 4/9/2009 oral argument on the motions is unreasonable and excessive.

Mr. Coppola billed a total of 29.1 hours "preparing oral argument" and "arguments re motion to dismiss and motion for sanctions" that was held on April 9, 2009. (Li Decl., Ex. C, Schedule 5)  These 29.1 hours should be reduced by at least two thirds (2/3) to 9.7 hours because the preparation for the oral argument did not aid the Court in its resolution of the issues.  Experience dictates that the preparation for oral argument on motions should have been reviewing the filed motion papers, highlighting key points of the arguments, conceiving and drafting questions that the Court may ask of counsel, and outlining answers, which does not require 29.1 hours to do in this case.

### 4. The total time expended in making the instant motion for fees is unreasonable and excessive.

Koon Chun's counsel billed 37.40 hours (35.1 + 2 + 0.30) for making the instant motion for fees and expenses and pre- and post-judgment interest.  (Li Decl., Ex. C, Schedule 6)  But this motion is essentially a replica of its motion for fees and costs submitted to Judge Gold in the First Action, both in its arguments and the supporting documents (except for the billing records).  (Li Decl., Ex. D)  As such, it does not require 37 some hours or almost five business days to revise the previous motion for this one.  Accordingly, the Court is requested to reduce the hours by at least one half (1/2) to 18.70 hours.

**E.  Koon Chun's Counsel's Fees Should Be Reduced for
Their Vague and Incomplete Entries and Block Billing.**

The Court is further requested to reduce the recalculated fees of Koon Chun counsel

by at least 10% for their vague and incomplete entries and block billing.

"Applications for fee awards should generally be documented by contemporaneously

created time records that specify, for each attorney, the date, the hours expended, and the

nature of the work done."  Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir.1998) (citing,

inter alia, Hensley) (affirming the District Court's fee award to plaintiff in an action under

Age Discrimination in Employment Act reducing the total amount of fee request from

$329,431.30 to $89,475; affirming the District Court's adjustment of counsel's hourly rate

from $325/hour to $250; affirming the District Court's 20% reduction of counsel's time for

vagueness, inconsistencies, and other deficiencies in the billing records).

A court may reduce a fee award because of "vagueness, inconsistencies, and other

deficiencies in the billing records."  Id., at 172 (holding that "letter to court," "staff

conference," or "work on motion" are entries that have been deemed too vague to sufficiently

document hours claimed); see also Nu-Life COnstr. Corp. v. Bd. of Educ. of City of N.Y.,

795 F.Supp. 602, 607 (E.D.N.Y.1992), applying 30% deduction due to vague time entries;

Carey, 711 F.2d at 1146 ("When a court is unable to determine the reasonableness of a fee

application due to vagueness, a percentage reduction is appropriate."); Miroglio S.P.A. v.

Conway Stores, Inc., 05 Civ. 121 (BSJ)(GWG), 2009 WL 1490546, at *4 (S.D.N.Y. Jun. 22,

2009) (holding that time entries such as "letter to Dweck," "telephone call to Dweck," and

"discussion with Dweck" were overly vague); Spalluto v. Trump Int'l Hotel & Tower, 2008

WL 4525372, at *8 (S.D.N.Y. Oct. 2, 2008) (holding that "cursory descriptions, such as ...

'prepare correspondence to co-counsel,' and 'prepare letter to court' are too vague").

- 21 -

Plaintiff billing also suffers the flaw of block entries--"billing a large number of hours for multiple tasks."  Miroglio, 2009 WL 1490546, at *5.  Block entries "ha[ve] a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are 'duplicative or unnecessary.' [citations omitted]  'Courts can reduce awards for block billing because comingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities.'"  Id. (internal citations omitted) (alterations original); see also Sea Spa Holdings, Ltd. v. Fali Fin Group, Inc., 277 F.Supp.2d 323, 326 (S.D.N.Y.2003) (reducing requested fee by fifteen percent for block entries); Gonzalez v. Bratton, 147 F.Supp.2d 180, 213 (S.D.N.Y.2003) (reducing the requested fees by twelve percent for block entries).

Here, numerous time entries are overly vague and incomplete.  For example, Mr. Coppola's repeated uses of "Edit" and "Draft" of motion to dismiss and Rule 11 sanction (c.f. overly vague "work on motion" held in Kirsch), the entries of "Call with R. Chan re next steps" (2/6/08), "Meeting with JAS re status of case; email to R. Chan re next step" (9/11/08), "Meeting with JAS, RLC re next steps" (9/23/08); Mr. Schwab's "Work re next steps" (10/6/08); Mr. Crisona's "Oc's JAS,AAC re strategy; review Chan memo re same; services re same" (9/23/08); Mr. Choi's "Prepare answer to complaint" (12/11/07), "Revise Answer" (1/7/08), "Legal research re issues relating to answer to complaint" (2/21/08), "Legal research re issues relating to answer to complaint; review and revise answer" (2/22/08), "Services related to preparation of Rule 11 motion papers" (10/21/08), "Services related to preparation of motion to dismiss and related papers" (11/25/08), "Services related to preparation of reply

memo" (1/19/09), are overly vague and incomplete that are insufficient to inform the "nature of the work done."  Kirsch, 148 F.3d at 173.

In addition, numerous entries are block billing, such as Mr. Coppola's "Review complaint; review research re possible bases for dismissal of complaint; review court's scheduling order; discussion of same with R. Chan" (8/10/07) (1.4 hours); "Research re Rule 11 sanctions; edit motion to dismiss and motion for sanctions; call with R. Chan re same" (3/14/08) (5.00 hours); "Review revised motion to dismiss and motions for sanctions, supporting declarations and exhibits; call with R. Chan re same" (5/23/08) (3.00 hours); "Draft letter to Judge Bianco re request for pre-motion conference; call with R. Chan re next steps, motions to dismiss and for sanctions; meeting with JAS, RLC re next steps; telephone call with R. Chan re same; edit of motion for sanctions; emails to R. Chan re proposed changes to motion for sanctions and letter to Judge Bianco" (9/24/08) (5.30 hours); "Finalize motion for Rule 11 sanctions and supporting documents thereto; emails and telephone calls with R. Chan re same; draft letter to Judge Bianco requesting pre-motion conference re 12(c) motion to dismiss; filing of motion and letter" (10/22/08) (7.00 hours); "Review plaintiff's opposition to motion to dismiss and for sanctions; call with R. Chan re same; outline reply to opposition" (1/12/09) (6.20 hours); "Draft reply brief in support of motion to dismiss pursuant to Fed.R.Civ.P12(c) and for Rule 11 sanctions; research re defendant Estoppel; email and call with R. Chan re same; and draft letter to Court re extension of page limit and request for clarification of filing date of papers" (1/13/09) (6.20 hours).  These block entries make it impossible to ascertain the amount of time expended on the distinct tasks described and difficult to "determine if the reported hours are 'duplicative or unnecessary.'"  Miroglio, 2009 WL 1490546, at *5.

Accordingly, the Court is requested to reduce the fees by at least ten percent (10%) for the vague and incomplete entries and block billing.

**F. The Application of the <u>Johnson</u> factors warrants the requested reduction of total hours and fees.**

Applying the <u>Johnson</u> factors, as Koon Chun does in its opening brief, provides further support for the Court's deductions of the total hours and fees because many factors weigh in Star Mark's favor.

Factor No. 1, time and labor required.  Koon Chun's counsel contends that despite Star Mark's "baseless" claims they are "still obligated to spend significant amounts of time to prepare its motions to dismiss the Complaint and for Sanctions and offer counter-arguments against these unreasonable allegations."  KC Mem. at 10.  As noted by the Eighth Circuit in <u>Bailey</u>, these two positions are inconsistent.

Factor No. 2, novelty and the difficulty of questions involved.  Koon Chun counsel does not directly address this factor.  But the non-responsive answer fairly suggests that the questions involved are not mundane or ordinary as they had performed "comprehensive analysis and legal research." <u>Id.</u> at 11.

Factor No. 3, level of counsel's skills.  Koon Chun counsel concedes that Star Mark's complaint "required counsel with a considerable amount of skill and understanding of trademark and litigation law to address the issues involved" (<u>id.</u>), thus suggesting that the issues involved are not simple or ordinary.  While this concession mitigates against the severity of Star Mark's violation of Rule 11, the examples Koon Chun's counsel gives to illustrate the point, i.e., trademark abandonment and fraud on the P.T.O., are fairly fundamental concepts in trademark law.

Factor No. 4, preclusion of employment due to acceptance of the case.  This factor weights in favor of Star Mark.

Factor No. 5, counsel's customary hourly rates.  The Court is requested to refer to the argument points regarding application of the forum rule under <u>Simmons</u> and the reasonableness of the rates.

Factor No. 6, fixed or contingent fee.  This factor weighs in favor of Star Mark.

Factor No. 7, time limitations.  This factor weighs in favor of Star Mark.

Factor No. 8, the amount involved and results obtained.  Although Koon Chun is a prevailing party, the amount involved in obtaining the result is unreasonable and excessive.

Factor No. 9, counsel's experience, reputation and ability.  As shown in the foregoing, the AFS firm may have experience and reputation in patent prosecution and patent law litigation, but it is not known if the firm has established reputation in trademark law litigation.[7]

Factor No. 10, the "undesirability" of the case.  This factor weighs in favor of Star Mark.

Factor  No. 11, the nature and length of the professional relationship with the client. While the AFS firm remains counsel of record in the pending First Action and this action and represented Koon Chun in the <u>Yang Shing</u> matter, the firm does not represent Koon Chun in five other similar matters it has commenced in this District since 2004.

Factor No. 12, award in similar cases.  The cases cited by Koon Chun under this factor are not "similar cases." In <u>AHVRAM v. Bank Austria Creditanstalt</u>, No. 04 Civ. 3600(SWK),

---

[7] The Court is requested to note that Koon Chun in the First Action sought $373,056 (before trebling) as its economic damages, out of which an amount of $27,654.80 was awarded, a success rate of 7.4% on economic damages along with the result in its favor of Star Mark's willful infringement.  However, for this low success rate, Koon Chun's attorney's fees and expenses exceeded $1,000,000.

2005 WL 3099592 (S.D.N.Y. Nov. 17, 2005), plaintiffs were the Association of Holocaust

Victims for Restitution of Artwork and Masterpieces and several individuals including

plaintiff's counsel, Mr. Fagan, himself, seeking $6.8 billion damages against various

corporations, governmental entities, and financial institutions, including Bank Austria

Creditanstalt AG ("Bank Austria"), alleging the theft, retention and sale of artwork looted

during the Holocaust.  In an earlier decision, Judge Kram granted Bank Austria's motion to

dismiss and sanctioned Mr. Fagan, citing his attempted circumvention of an earlier Bank

Austria settlement, his conduct during the course of litigation, and his apparently champertous

stake in the action.  Bank Austria was represented by Stroock & Stroock & Lavan ("Stroock"),

a national law firm that the Court noted commonly represented clients in high-stakes

corporate litigation.  Stroock staffed the lawsuit with eight different lawyers, ranging from

first- and second-year associates to partners and counsel with nearly fifty years of complex

litigation experience, expending a total of 1,309.1 hours.  Although Stroock billed and Bank

Austria paid the attorneys varied from $245 per hour for first- and second-year associates to

$730 per hour for senior partners, Stroock limited its request to $350 per hour for partners and

$300 per hour for associates.  The Court upheld the $350 per hour for partners but reduced the

rate of associates to $225, reduced the time for certain proceedings and finally reduced the

total recalculated fees by 25% to $293,173.50.  The Court was aware that the sanction was

heavy, but nonetheless imposed it because Mr. Fagan did not oppose the Bank's fee

application and that the Court noted Mr. Fagan received a substantial attorney's fee award in a

recent multi-million dollar settlement approved by the Court.  As to REFAC Int'l, Ltd. v.

Hitachi Ltd., 141 F.R.D. 281 (C.D.Cal.1991), it was decided prior to the 1993 Amendment.

Furthermore, the REFAC plaintiff sued 118 defendants for infringement of patents relating to

liquid crystal display technology and that the Court entered judgment of noninfringement and dismissed the action as sanction for failure to comply with discovery orders.  The total amount of attorney's fees of $1,446,511.49 was a combined sum of all fees claimed by the defendants.  As to Avirgan v. Hull, 932 F.2d 1572 (11th Cir. 1991), the case was also decided prior to the 1993 Amendment.  Furthermore, the RICO lawsuit named as defendants that included alleged Central Intelligence Agency operatives, military intelligence personnel, arm merchants, mercenaries, and Colombian drug lords.  The total amount of fees and costs awarded $1,034,381.36 was also a combined sum of all fees and expenses claimed by the defendants incurred in the course of two years of discovery through motions for summary judgment.  As to Skidmore Energy, Inc. v. KPMG, 455 F.3d 564 (5th Cir.2006), the complaint was against 21 mostly foreign defendants claiming damages of $3 billion based on Sherman Act and RICO violations that arose from oil and gas exploitation activities in Morocco and the amount of fees and costs award $530,668 was the combined total of all fees and expenses claimed by the defendants.  As to Brandt v. Schal Associates, Inc., 960 F.2d 640 (7th Cir.1992), which is discussed at the beginning of this Memorandum, the case was decided prior to the 1993 Amendment and the fees were incurred over four years of the RICO suit after considerable discovery.

Based on the foregoing, the Court is respectfully requested to determine that the reasonable attorney's fees and paralegal fees be $43,233.00, as calculated in Schedule 7, Li Decl., Ex. C.  The Court is further respectfully requested to allocate equal liability between Star Mark and its counsel.

## POINT III

## KOON CHUN IS NOT ENTITLED TO THE FULL AMOUNT OF LEGAL RESEARCH CHARGES.

Koon Chun also includes a total of $6,583.01 as expenses for its monetary sanction award, representing $6,498.69 for "Legal Research" and $84.32 for "Shipping."  Coppola Decl., Ex. 5.

As to the legal research charges, the hand-circled items shown in the billing record (Coppola Dec., Ex. 1) add up to $6,069.13, rather than $6,498.69.  Koon Chun submits what appears to be daily user reports but does not provide information about detailed using charges. The daily user reports, however, list only the daily total by a particular attorney for the account of Koon Chun, particularly in December 2007 and January 2008 the AFS firm was counsel for Koon Chun in the First Action when the case was tried and post-trial briefs were being made.  The trial of the First Action was completed on December 4, 2007 and the parties submitted their respective Post-Trial Memorandum of Law on January 14, 2008 and their Reply Brief on January 21, 2008.  Coincidentally, Koon Chun counsel's billing record submitted in the First Action shows that between December 21, 2007 and January 22, 2008, Mr. Choi spent numerous hours conducting legal research and Mr. Coppola and Mr. Crisona also billed time conducting legal research and drafting Post-Trial and Reply Briefs.  (Li Decl, Ex. E)  Because these attorneys were obviously engaged in drafting post trial briefs in the First Action, a large amount of alleged "legal research" charges were incurred on those days when these attorney did not even bill any time in this action.  (Li Decl., Ex. C, Schedule 8) Therefore, these legal research charges may arguably billed in the First Action, they are clearly not for legal research performed in this case.

Accordingly, the Court is requested to deduct $5,792.28 from $6,069.13 to $276.85, for a total amount of $361.17 (276.85 + $84.32).  The Court is further requested to allocate equal liability between Star Mark and its counsel.

**POINT IV**

**THE COURT SHOULD NOT AWARD PREJUDGMENT INTEREST.**

Koon Chun also seeks an amount of $5,594.91 in prejudgment interests on the attorney's fees.  In doing so, Koon Chun, once again, relies on the Seventh Circuit pre-1993 Amendment case <u>Brandt</u> for the "make-whole" sanction theory under Rule 11.  Award of prejudgment interest is within the direction of the trial court, but is "normally reserved for 'exceptional' cases."  <u>American Honda Motor Co. v. Two Wheel Corp.</u>, 918 F.2d 1060 (2d Cir.1990).  In <u>BASF Corp. v. Old World Trading Company</u>, 839 F.Supp. 528, 534 (N.D.Ill.1993), plaintiff prevailed in Lanham Act case sought attorney's fees and prejudgment interest.  The Court denied prejudgment interests on attorneys fees because the attorneys were paid on an hourly basis and did not take the case on a contingency and additionally the attorneys there had already received payment for their work).  Here, as in <u>BASF Corp.</u>, Koon Chun's attorneys were paid on an hourly basis and the fees were paid.  Accordingly, the Court is requested to deny prejudgment interest.

## <u>CONCLUSION</u>

For the reasons stated herein, the Court is requested not to impose monetary sanction under Rule 11 or alternatively, the Court is requested to impose monetary sanction in partial reimbursement of fees incurred by Koon Chun in defending this action.  Alternatively, the Court is requested to find Koon Chun's fees and costs are excessive and unreasonable; that the reduced amount of **$43,233.00** be reasonable fees commensurate with the work performed in this matter; that the amount of **$361.17** be reasonable expenses; that the Court allocate the liability equally between Star Mark and its counsel; and that the Court grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: New York, New York
        October 19, 2009

LAW OFFICES OF BING LI, LLC
Attorneys for Star Mark

By:/s/_____
    Bing Li (BL 5550)