```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
STAR MARK MANAGEMENT, INC., a New
York corporation, GREAT MARK
CORPORATION, a New York corporation, and
JIMMY ZHAN a/k/a YI Q. ZHAN, individually
and on behalf of Star Mark Management, Inc.
and Great Mark Corporation,

                        Plaintiffs,
                                                              REPORT &
            -against-                                         RECOMMENDATION
                                                              07-CV-3208 (KAM)
KOON CHUN HING KEE SOY & SAUCE
FACTORY, LTD., a company organized under
the laws of Hong Kong,

                        Defendant.
-----------------------------------------------------------X
```
Gold, S., *United States Magistrate Judge*:

## INTRODUCTION

Plaintiffs, Star Mark Management, Inc., Great Mark Corp., and Jimmy Zhan a/k/a Yi Q. Zhan (collectively "plaintiffs" or "Star Mark"), brought this action against defendant, Koon Chun Hing Kee Soy & Sauce Factory, Ltd. ("Koon Chun"), seeking a declaratory judgment and cancellation of a trademark held by defendant pursuant to 15 U.S.C. §§ 1051 *et. seq*. By Memorandum and Order dated September 8, 2009 ("M&O"), the Honorable Kiyo A. Matsumoto dismissed plaintiffs' claims and granted defendant's motion for sanctions against plaintiffs and their attorney pursuant to Federal Rule of Civil Procedure 11. Docket Entry 32. Defendant was awarded its reasonable costs and attorneys' fees related to its defense of this matter. *Id*. By Order dated April 5, 2010, Judge Matsumoto referred the matter to me to report and recommend on the amount of fees and costs to be awarded.

## PROCEDURAL HISTORY

Familiarity with the underlying facts and procedural history of the instant case is generally assumed. *See* M&O 2-9. To summarize, this action stems from a prior litigation between the same parties, in which Koon Chun brought suit against Star Mark for trademark infringement. *Id.* at 3; *see also Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 628 F. Supp. 2d 312 (E.D.N.Y. 2009). During the pendency of the original suit, Star Mark sought to move for leave to amend its answer to raise affirmative defenses and counterclaims based upon its claim that the Koon Chun trademark was invalid under the Lanham Act. M&O 4. Star Mark claimed that the product at issue, "hoisin sauce," – which translates in English to "fish sauce" – does not contain fish. In response, I stated that

> to suggest that a label is misleading because something is called seafood sauce and doesn't contain seafood when many sauces that we use . . . aren't named . . . based upon their ingredients but rather by the foods that they're used to accompany . . . . [I]t's stunning to me that such a motion would be contemplated much less pursued.

*Id.* at 5-6. I warned Star Mark that, while I had no authority to preclude the filing of such a motion, I would consider imposing sanctions pursuant to 28 U.S.C. § 1927 if it were brought without a stronger basis than Star Mark offered at the time. *Id.* at 6. Star Mark elected not to file its contemplated motion; instead, Star Mark asserted its trademark registration claim in a new action, justifying its decision by citing the risk of sanctions were it to proceed in the original case.[1] *Id.* at 8.

As noted above, in this action, Koon Chun filed motions for sanctions pursuant to Rule

---

[1] In the initial action, after a bench trial, Koon Chun was awarded $82,964.40 in damages as well as reasonable attorneys' fees and costs. *Koon Chun*, 628 F. Supp. 2d at 328.

11 and for dismissal pursuant to Rule 12(c). Docket Entry 21. Judge Matsumoto granted both motions, stating that "[i]t is difficult for the court to envision a stronger case for the imposition of Rule 11 sanctions premised on the filing of a frivolous complaint than the instant action." M&O 34. The Court imposed sanctions on both Star Mark and its counsel and directed Koon Chun to submit proof of costs and attorneys' fees. *Id.* at 36. Koon Chun requests that the court award it $163,523.66, the amount of attorneys' fees and costs it expended in this action, plus pre-judgment interest. Def. Reply 10.[2]

**DISCUSSION**

As a threshold matter, plaintiffs argue against the imposition of any sanctions. Star Mark points to the discretionary nature of Rule 11 sanctions, and requests that the Court not impose monetary sanctions or, in the alternative, that the Court award an amount approximately 70% less than the amount of fees defendant incurred. Pl. Opp. 2-6.[3] More specifically, plaintiffs contend that an award of attorneys' fees and costs is not an appropriate sanction because Rule 11's purpose is to deter future conduct, not to compensate prevailing movants. Judge Matsumoto, however, has already determined that the imposition of fees and costs is a proper sanction. Thus, whether or not to impose costs and fees as a sanction in this case is no longer at issue; this matter was referred to me to report and recommend on the *amount* of fees and costs that should be

---

[2]"Def. Reply" refers to Defendant's Reply Memorandum of Law in Further Support of its Motion for Attorneys' Fees and Expenses and Post-Judgment Interest, Docket Entry 42.

[3]"Pl. Opp." refers to Star Mark's Memorandum of Law in Opposition to Koon Chun's Motion for Attorney's Fees and Costs and Pre- and Post-judgment Interest Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Docket Entry 38.

3

awarded in light of Judge Matsumoto's decision granting defendant's Rule 11 motion.[4]

In the Second Circuit, courts determine a "presumptively reasonable fee" award by calculating the product of the hours reasonably expended and a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008). A reasonable rate should be determined by considering what a reasonable, paying client would be willing to pay, taking into account, among other things, the complexity and difficulty involved in the case and the resources required to prosecute the case effectively. *Id.* Generally, courts should determine fee awards by applying rates charged by attorneys employed in the district where the court sits. *Simmons v. New York City Trans. Auth.*, 575 F.3d 170, 172 (2d Cir. 2009). A party may overcome the presumption in favor of rates charged by counsel in the forum district only by establishing "that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* at 175.

As noted above, defendant here seeks $163,523.66 in fees and costs, comprised of $161,502.50 in attorneys' fees for the time expended by the law firm of Abelman, Frayne, and Schwab ("AFS") and $2,021.16 in costs.[5]

---

[4]In any event, deterrence and compensation are not mutually exclusive. *See* FED. R. CIV. P. 11(c)(4) (specifically permitting an award of attorneys' fees if "warranted for effective deterrence").

[5]Defendant has complied with the requirement of *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), that contemporaneous time records be submitted with all fee applications. *See* Defendant's Memorandum of Law in Support of its Motion for Attorneys' Fees and Expenses and Post-Judgment Interest ("Def. Mem.) Ex. 1, Docket Entry 33.

Defendant's initial calculation of fees and costs assessed the total as $156,652.51. Declaration of Anthony A. Coppola in Support of Defendant's Motion for Attorneys' Fees ("Coppola Decl.") ¶ 10, Docket Entry 33. However, defendant acknowledged in its reply memorandum that $4,886.81 in legal research costs from the first action between these two

Coppola Decl. ¶ 10; Def. Reply 10.  Plaintiffs contend that the fees sought by defendant are unreasonable because: 1) the hourly rates are too high; 2) the hours expended are "duplicative, redundant, and unnecessary," Pl. Opp. 15; and 3) defendant is not entitled to the full amount of its research costs.  Plaintiffs also oppose an award of pre-judgment interest.

1.      *Attorneys' Fees*

   a.      *Hourly Rates*

Defendant seeks reimbursement for its attorneys at the following hourly rates: Schwab, a founding partner with 44 years of intellectual property law experience, $450; Crisona, a partner with 23 years of experience, mostly in intellectual property law, $350 to $420; Coppola, a partner with 21 years of experience, exclusively in intellectual property law, $350 to $420; Choi an associate with nearly six years of experience in intellectual property law, $300 to $325; and various paralegals, $90.[6]  Coppola Decl. ¶¶ 12, 14.  Defense counsel states that these "billing rates are within the normal range for intellectual property attorneys, law clerks, and paralegals of comparable experience practicing in New York City."  *Id.* ¶ 15.  The offices of defense counsel are located in Manhattan, in the Southern District of New York.

Plaintiffs contend that the hourly rates sought by defendant's counsel should not be approved because defendant has failed to overcome the *Simmons* presumption in favor of forum rates.  Moreover, plaintiffs argue that the rates sought here are greater than those typically awarded in this district and that the procedural nature of defendant's motion to dismiss does not

---

parties had erroneously been included as part of defendant's costs in the instant case.  Def. Reply 7.  Defendant then added approximately $10,000 in fees that defendant billed in connection with its reply papers after its original fee submission was filed.  *Id*. at 10.

[6]AFS increased its rates beginning February 1, 2008.  Coppola Decl. ¶ 14.

justify the higher hourly rates typically awarded to attorneys specializing in intellectual property matters. Pl. Opp. 7-13.

The circumstances in this case support a departure from the *Simmons* forum rule. One way in which the presumption may be overcome is "by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Simmons*, 575 F.3d at 176. Here, Koon Chun's Regional Manager for the Americas submitted a sworn declaration in which he avers that "despite [his] best efforts to locate such counsel, [he] did not find any law firms in the Brooklyn area that specialized in intellectual property law practices." Chan Decl. ¶ 5. *See also Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 2009 WL 5185808, at *5 (E.D.N.Y. Dec. 23, 2009) (noting that "I am aware of few if any litigation firms specializing in intellectual property matters with offices based in the Eastern District of New York"). Moreover, plaintiff hired AFS in particular because AFS had a "trademark attorney, who was fluent in speaking, reading and writing Chinese." Chan Decl. ¶ 10. In addition, it was reasonable for Koon Chun to retain the same counsel in this action as it retained in the earlier litigation, in light of the significant overlap of the two cases.[7] Accordingly, I find that defendant has established circumstances sufficient to overcome the *Simmons* presumption.[8]

---

[7]Plaintiffs also argue that defendant could have retained the firm of Yuen Roccanova Seltzer & Sverd LLP ("YRSS") as it has in other Eastern District cases. Plaintiffs' contention is without merit. First, plaintiffs concede that YRSS listed a Manhattan address on the docket sheet for cases in which it represented Koon Chun, although YRSS also has an office in Long Island, New York. Second, for the reasons stated in the text, the hiring of AFS in this action was reasonable. Finally, plaintiffs offer no basis to believe that the hourly rates charged by YRSS are lower than those charged by AFS.

[8]Star Mark's other claims – that the procedural nature of the Rule 12 motion does not justify attorneys' fees at the rate charged by Koon Chun's counsel and that AFS' attorneys have demonstrated expertise in patent law but not trademark law – similarly lack merit and do not

In the earlier related litigation, I found AFS' rates reasonable. *Koon Chun*, 2009 WL 5185808, at *5-6. Koon Chun has also presented evidence indicating that AFS' rates are in line with those of other intellectual property firms. *See* Coppola Decl. Ex. 4 (2006 study showing that the median rates for intellectual property lawyers in the New York City area are $443 for partners and $330 for associates). I therefore respectfully recommend that the hourly rates sought by defense counsel be approved.

*b. Time Expended*

Defendant seeks compensation for 381.75 hours of attorney time and 62.4 hours of paralegal time. Def. Reply Ex. 2. Plaintiffs complain about the amount of time spent by defense counsel on virtually every aspect of the case. *See* Pl. Opp. 17-23.

In particular, plaintiffs contend that it was unreasonable for defendant to spend more than 200 hours drafting and editing motions for dismissal and for Rule 11 sanctions. *Id.* at 17. Defendant explains that the high number of hours billed for the two motions stemmed from its initial decision to wait for a ruling in the first action, and its realization, upon abandoning that plan and resuming work on the motions, that "further work was necessary." Def. Reply 4. Defendant's explanation is insufficient to justify such a large number of hours for these two substantially similar motions. *Compare* Docket Entry 10 *with* Docket Entry 21.

The excessiveness of defendant's hours is compounded by the fact that a partner billed for the bulk of the work in this case. A total of 308.9 hours, or more than 80% of the hours billed by attorneys, were billed by Coppola, a partner who billed at the hourly rate of $420 for the majority of the case. The unreasonableness of the hours is further demonstrated by counsel's use

---

justify a reduction of the rates charged by defendant's counsel.

of block billing and vague entries. For example, Coppola billed approximately 96 hours from February through April of 2008 using substantially the same billing entries – "Edit motion to dismiss and motion for sanctions; call with R. Chan re same." *See, e.g.*, Coppola Decl. Ex. A (billing entry for 3/12/08). I find that the number of hours billed by a partner for these Rule 11 and Rule 12 motions, portions of which were substantially similar, was excessive. Although defendant argues that plaintiffs' complaint contained five claims, each of which was frivolous for five different reasons, Def. Reply 5, over 200 hours need not have been spent on such motion practice, particularly by a partner with substantial intellectual property litigation experience.

For these reasons, I respectfully recommend that the fees awarded to defendant be reduced by 35% across-the-board. *See Carey*, 711 F.2d at 1146 (recognizing that a judge "was acting within his discretion when he chose to make percentage reductions in response to defendants' detailed claims that fee application contained excessive and duplicative hours"). Accordingly, I recommend defendant be awarded $104,976.63 in attorneys' fees.

*2.  Costs*

In addition to attorneys' fees, defendant seeks $2,021.16 in costs.[9] Defendant's costs are comprised of $1,936.84 in legal research fees and $84.32 in shipping expenses. Coppola Reply Decl. Ex. 3. Whether to award online legal research fees on a Rule 11 motion is within the court's discretion. *U.S. for Use & Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridan*

---

[9]As noted earlier, defendant originally sought a greater amount in costs but then subtracted $4,886.81 in legal research fees that stemmed from the prior litigation between these parties. Def. Reply 7. Defendant also appears to have reduced the legal research fees invoiced on June 30, 2008 from $207.89 to $122.89. *Compare* Coppola Decl. Ex. 5 *with* Coppola Reply Decl. Ex. 3, Docket Entry 44-3. Defendant then added an additional $409.96 in legal research costs it incurred in preparing its reply memorandum. Coppola Reply Decl. Ex. 3.

*Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) (affirming denial of an award of research costs on a Rule 11 motion, stating that "the district court did not abuse its discretion in declining to shift the cost of this item"); *but see Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 369 F.3d 91, 97 (2d Cir. 2004) (finding that research costs are recoverable in fee awards pursuant to fee-shifting statute). *See also Kochisarli v. Tenoso*, 2007 WL 1017613, at *6 (E.D.N.Y. Mar. 30, 2007) (citing *Evergreen* and *Arbor Hill* and awarding research fees on a Rule 11 motion); *Cartier Intern. B.V. v. Gorski*, 2003 WL 25739624, at *5 (D. Conn. Apr. 30, 2003) (denying an award of online legal research costs as part of fees and costs awarded upon a finding of contempt); *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999) (declining to include computer research fees when awarding costs in a Lanham Act case). In light of the discretionary nature of such an award and, as discussed below, Rule 11's primary purpose of deterrence rather than compensation, I recommend that defendant's claim for the costs of online research be denied. I find the shipping costs to be minimal and reasonable, with the exception of $23.93 in shipping expenses that I believe defendant incurred in the other action. *See* Coppola Decl. Ex. 1 (FedEx expenses for 6/15/09).[10] Accordingly, I respectfully recommend that defendant be awarded $60.39 in costs.

3.  *Financial Hardship*

Plaintiffs and their counsel appear to argue that any sanction imposed should be significantly reduced in light of their inability to pay a large judgment. Zhan Decl. ¶ 4, Docket Entry 36; Li Decl. ¶ 11, Docket Entry 37; *see also* Pl. Opp. 6 (suggesting that the sanction should

---

[10]Koon Chun filed voluminous documents in 04-CV-2293 on June 15, 2009, Docket Entries 229-31. There does not appear to have been any activity in 07-CV-3208 in June of 2009.

9

be capped at slightly more than $43,000). The purpose of a Rule 11 sanction is deterrence, and the Rule therefore limits any sanction "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4). The Second Circuit has therefore held that it is "well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay." *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986); *see also Estate of Calloway v. Marvel Entm't Group*, 9 F.3d 237, 241 (2d. Cir. 1993) (noting that "sanctions in excess of an attorney's net worth may serve no useful purpose"); *Schottenstein v. Schottenstein,* 2005 WL 912017, at *2 (S.D.N.Y. Apr. 18, 2005) (recognizing that financial hardship is a factor to consider in determining an appropriate Rule 11 sanction). The conclusory affidavits of Zhan and Li, however, submitted without any supporting documentation, are insufficient to warrant any reduction in the sanction imposed.[11] Zhan Decl. ¶ 4; Li Decl. ¶ 11. Nonetheless, during the time permitted for objections, Zhan and Li may supplement their financial information and provide greater detail in support of their claim of financial hardship. I respectfully recommend that Judge Matsumoto consider the additional evidence concerning the financial status of Zhan and Li in determining whether a reduction is appropriate.

4.  *Interest*

Finally, Koon Chun seeks an award of pre- and post-judgment interest on the fees and costs assessed against plaintiffs. Star Mark, citing *American Honda Motor Co. v. Two Wheel*

---

[11]Zhan and Li do offer in their respective affidavits to submit documents supporting their claims of financial hardship to the court for *in camera* review. Although it may be appropriate to submit such documents under seal and pursuant to a protective order, I see no reason for the court to receive them *ex parte* and *in camera*.

*Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990), opposes an award of interest on the grounds that assessment of interest is discretionary and generally reserved for "exceptional cases." Pl. Opp. 29. Star Mark also argues that interest is not appropriate because defendant's attorneys have already received payment from defendant. *Id*.

Plaintiffs' reliance on *American Honda Motor* is misplaced. In *American Honda Motor*, the Second Circuit was concerned with a decision not to award interest under the Lanham Act, not interest on sanctions ordered pursuant to Rule 11. In any event, Judge Matsumoto's conclusion that "[i]t is difficult for the court to envision a stronger case for the imposition of Rule 11 sanctions . . .," M&O 3, seems a fair indication that the instant case is exceptional and thus warrants an award of interest. Further, although defense counsel states that it has been paid for its services, the award of attorneys' fees will compensate Koon Chun for the lapse of time between its payments to counsel and the fee award to be paid by plaintiffs and their counsel. *See Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 651-652 (7th Cir. 1992) (upholding district court's award of $84,000, in addition to Rule 11 sanctions, for "delay factor").

Defendant seeks interest from the date Koon Chun paid each of its counsel's invoices. Coppola Decl. ¶ 23. I, however, recommend that interest accrue from September 8, 2009, the date on which Judge Matsumoto granted defendant's motion for sanctions. *See Estate of Calloway*, 9 F.3d at 241-42. Defendant seeks interest at the U.S. prime rate, compounded daily. Coppola Decl. ¶¶ 24, 25. Since December, 2008, the prime rate has remained 3.25% and I therefore recommend an award of interest at that rate, beginning from September 8, 2009, to be calculated by the Clerk of the Court at the time of judgment. *See id.* Ex. 8; *see also* http://www.wsjprimerate.us/wall_street_journal_prime_rate_history.htm.

5.  *Joint and several liability*

Finally, plaintiffs seek to have the award of attorneys' fees and costs split evenly between plaintiffs and their attorney, Bing Li. *See* Pl. Opp. 27; Zhan Decl. ¶ 3. Judge Matsumoto imposed sanctions jointly and severally against plaintiffs and their counsel. M&O 36 (holding that "the frivolous nature of the claims asserted in this action merit the imposition of attorneys' fees and costs against Star Mark and its counsel under Rule 11."). *See also Estate of Calloway*, 9 F.3d at 239 ("The Rule 11 violation was thus a coordinated effort, and joint and several liability is entirely appropriate."). Accordingly, I respectfully recommend that plaintiffs' request for an even division of fees and costs between Li and plaintiffs be denied.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that judgment be entered jointly and severally against plaintiffs and their attorney in the total amount of $105,037.02, comprised of $104,976.63 in attorneys' fees and $60.39 in costs. I further recommend that defendants be awarded interest at the rate of 3.25% per annum, accruing from September 8, 2009, to be calculated by the Clerk of the Court at the time of judgment. Finally, my recommendation is made without prejudice to plaintiffs and their counsel filing documentation of their financial status during the time permitted for objections.

Any objections to the recommendations made in this Report must be filed within fourteen days of this Report and Recommendation and, in any event, on or before September 27, 2010. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

<div style="text-align: right;">

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

</div>

Dated:       Brooklyn, New York
              September 9, 2010